Cheryl A. BOYD, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN SERVICES, Respondent.**

No. 84–1148.

District of Columbia Court of Appeals.

Argued Sept. 5, 1985.

Decided April 21, 1987.

Gary Vujnovich, with whom Gerald Elliott, Law Student, was on the brief, for petitioner.

Charlotte Brookins-Pruitt, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel at the time the brief was filed, John H. Suda, Principal Deputy Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel,

Washington, D.C., were on the brief, for respondent.

Before BELSON and STEADMAN, Associate Judges, and REILLY, Senior Judge.

PER CURIAM:

This is a petition for review of an order of the District of Columbia Department of Human Services (the "agency") which reduced by ten percent the rate of monthly payment petitioner was entitled to receive under a grant for Aid to Families with Dependent Children ("AFDC"), until a prior erroneous overpayment to her was recouped. Her contention is that this order was based on an agency policy or practice which was tantamount to a rule, and because such rule was adopted without compliance with the rulemaking requirements of the District of Columbia Administrative Procedure Act; codified at D.C.Code § 1–1506(a) (1981), referred to herein as DCA-PA, the order should be set aside.[1] In our opinion, the challenged agency action is not covered by that statute. Accordingly, we affirm.

The facts of the case are not in dispute. Petitioner Boyd was notified by the agency on August 3, 1983, that because in 1982 she had received, but had not reported certain wage earnings, an overpayment of AFDC benefits had been made to her "assistance unit" in the amount of $399.00.[2] The notice stated that the agency would recoup its overpayment by reducing her AFDC assistance, as of October 1, 1983, from $299.00 to $269.94 per month, reflecting a ten percent decrease in the customary monthly payment to her family. This would enable the government to recover the excess payment in thirteen months.

Obtaining a hearing and a stay of the proposed deduction, Boyd testified before a hearing examiner that her only source of income, aside from an allotment of food stamps, was AFDC assistance, which, if reduced by ten percent each month, would leave her with only $23 in cash after payment of rent. She explained that her monthly rental amounted to $246, that she was unable to find more affordable living quarters, and that although she had applied for public housing, she had succeeded only in being placed on a waiting list. She argued that the imposition of a ten percent recoupment rate would thus deprive her of reasonable subsistence.

The only other witness at the hearing, an agency supervisor, did not dispute that Boyd's only source of cash income was AFDC assistance, but testified that the agency, in notifying her of a ten percent reduction in such monthly assistance, did not regard as a relevant factor the hardship this would probably impose. When directly asked whether it was agency practice always to impose a ten percent rate to recoup overpayments from welfare recipients in situations similar to Boyd's, he answered in the affirmative.

Shortly after the close of the hearing, Boyd's counsel filed a brief raising the issues now before us on the petition. It asserted that the agency "practice" amounted to a rule, and that such rule had no validity in view of its adoption in disregard of the procedures required by DCA-PA. In a proposed decisionmaking findings of fact and conclusions of law, the hearing examiner rejected Boyd's position. He held, *inter alia*, that undue hardship was not a valid ground for any waiver of AFDC repayment; that the agency properly applied, under the relevant statutes and regulations, a ten percent rate of recoupment. In an apparent response to Boyd's assertion that in setting the ten percent rate the agency engaged in rulemaking in

1. D.C.Code § 1–1506(a) (1981), provides that thirty days prior to the adoption of a rule by the Mayor or an independent agency, a notice of the intended action shall be published in the D.C. Register, thereby affording interested persons an opportunity to submit their views with re-

spect to it. It is conceded that no attempt to follow this procedure was made here.

2. In 1982, Boyd was enrolled as a student at a local university and received "work-study" wages for employment she obtained as part of an educational grant; Boyd's "assistance unit" is

violation of the DCAPA,[3] the memorandum pointed out that the Council had not expressly enacted legislation deviating from the maximum deduction permitted by the federal regulations (*i.e.*, ten percent). Hence, he concluded the agency had no authority to recover overpayments at less than this rate. Boyd appealed, but the agency affirmed the examiner.

In analyzing the grounds for the agency action, the hearing examiner cited the regulations promulgated and published by the United States Department of Health and Human Services which govern state plans with respect to the recovery of AFDC overpayments and the correction of underpayments. *See* C.F.R. § 233.20(a)(13) (1983).[4] That portion of the regulation pertinent to this case reads:

> The State must take all reasonable steps necessary to promptly correct any overpayment.
>
> (1) Any recovery of an overpayment to a current assistance unit, including a current assistance unit or recipient whose overpayment occurred during a prior period of eligibility, must be recovered through repayment (in part or in full) by the individual responsible for the overpayment or recovering the overpayment by reducing the amount of any aid payable to the assistance unit of which he or she is a member or both.
>
> (2) If recovery is made from the grant, such recovery shall result in the assistance unit retaining, for any payment month, from the combined aid, income and liquid resources, (without application of section 402(a)(8) of the Act) not less than 90 percent of the amount payable under the State plan to a family of the same composition with no other income. Where a State chooses to recover at a rate less than the maximum, it must recover promptly.

comprised of herself and her two minor children.

**3.** The hearing examiner did not specifically advert to the DCAPA issue, although a fair reading of the decision suggests that he considered it.

**4.** The validity of these regulations is not an issue in this case. The authority to issue such

Petitioner correctly observes that the preceding paragraph does not mandate an imposition of a ten percent recovery rate from recipients in her situation. It merely sets a ceiling, and expressly permits a state to "choose to recover" at a lower rate. We turn now to the question of whether the District—a "state" for purposes of AFDC—did exercise such a choice. The only reference in our Code to the relevant federal regulation is an amendment enacted by the Council to the District of Columbia Public Assistance Act of 1982, D.C. Code § 3–218.1(b) (1985 Supp.) which, insofar as pertinent, provides:

> Any person who obtains any payment of public assistance to which he is not entitled, or in excess of that to which he is entitled, shall be liable to repay such sum, or if continued on assistance, shall have future grants proportionately reduced until the excess amount received has been repaid.... Collections of overpayments from AFDC recipients shall be made in accordance with 45 C.F.R. § 233.20(a)(13).

It is obvious that the last sentence of this statute does not resolve the question of what rate of reduction should be applied in the recovery of overpayments, for the federal regulation it incorporates by reference sets forth the alternatives previously summarized. Hence, in deciding on the practice of always making collections at the maximum rate, the agency, according to petitioner, selected one of the options delegated to it by D.C.Code § 3–218.1(b) and thereby adopted a "rule" in disregard of the requisite formalities of DCAPA. However, as we understand it, the government argues that the agency was compelled to adopt its current practice because the record does not show that the "state"—*i.e.*, the District Council—ever chose "to recov-

regulations derives from a grant-in-aid program defined in Title VI of the Social Security Act of 1935, as amended, popularly referred to as Aid for Dependent Children. 42 U.S.C. § 601 *et seq.* The Act, as amended, mandates that states promptly recover overpayments essentially in the manner prescribed in the implementing regulation. 42 U.S.C. § 602(a)(22).

er at a rate less than the maximum."[5] By failing to adopt a lower rate, the interpretation goes, the Council necessarily was acquiescing in the limit otherwise set by the federal statute and regulation. Furthermore, the agency takes the position that it has no rulemaking power in general, *see Rorie v. District of Columbia Department of Human Resources*, 403 A.2d 1148, 1153 (D.C.1979), and that no such power was impliedly granted it by the Council in the last sentence of § 3–218.1(b).

We have often reiterated our standard of review in a case of this kind. "[W]e defer to an agency's interpretation of a statute it administers unless that interpretation is unreasonable in light of the prevailing law. We reverse only where the agency's interpretation is contrary to the plain meaning of the statute." *MCM Parking Co. v. District of Columbia Department of Employment Services*, 510 A.2d 1041, 1043–44 (D.C.1986) (citations omitted). Applying that standard here, we cannot say that the interpretation of the governing law by the agency is not a reasonable one. To hold otherwise would mean that the AFDC plan of the District is silent on provisions concerning repayments that are mandated by the controlling federal statute and regulations, an unlikely intention of the Council.[6]

In urging us to reach a contrary result, petitioner relies heavily upon *Junghans v. District of Columbia Department of Human Resources*, 289 A.2d 17, 23 (D.C.1972), where we held that an order of the Mayor (then Commissioner) which purported to give effect to a formula to be used by DHS (then the Department of Human Resources) to reduce the cost of its public assistance programs was ineffectual rulemaking because it had been issued in disregard of the procedures proscribed by

D.C.Code § 1–1506(a) *supra*. In 1967, Congress amended the Social Security Act of 1935 to require all states to adjust the AFDC assistance standards to reflect increases in the cost of living. The District of Columbia, and other states, took it upon themselves to do so for all types of public assistance, although the 1967 amendment applied only to AFDC standards. For budgetary reasons, the District went further and adopted a specific formula by regulation to arrive at monthly public assistance payments for recipients. *Junghans, supra*, 289 A.2d at 20–21.

In setting aside the Mayor's order as having been promulgated in disregard of the provisions of DCAPA, *id.* at 25, we concluded that the order which implemented the Council's regulation was a "rule" within the context of that Act. We observed:

> Given the consequences for the residents of the District that flow from the decision by the Council and Commissioner to enact one of the several possible formulas for the payment of welfare assistance, the procedural steps taken by the Council and the Commissioner in this case require *careful scrutiny to determine whether they pass muster under the applicable statutes and rules.*

*Id.* at 25.

■ Despite our observations and holding in *Junghans*, that decision is not controlling here, for it dealt with a statutory framework which was superseded in relevant respects by the D.C. Self-Government Act of 1973[7] and subsequent legislation. Under Section 404(a) of that Act, Congress vested legislative power in the District Council, an elected body. Prior to that time, the Council, as a result of the Presidential Reorganization Plan of 1967, exer-

---

**5.** Further support for the view that the federal maximum sets a standard which the state has an option to vary is contained in the comments accompanying the promulgation of the federal regulation, cited by both parties: "The statute and regulations explicitly define the maximum that a State may recover each month. States are free to establish varying recovery rates less than the maximum rate as long as the recovery is prompt." Response to Comments, 47 Fed. Reg. 5649 (1982).

**6.** *Cf., Hamer v. District of Columbia Department of Human Services*, 492 A.2d 1253 (D.C.1985), where we held that a federally compelled change by DHS in administering Medicaid law did not require compliance with DCAPA.

**7.** Home Rule Act, Pub.L. No. 93–198, 87 Stat. 774 (codified at D.C.Code § 1–201 *et seq.* (1981)).

cised rulemaking authority, in contradistinction to legislative powers; *i.e.*, it implemented by regulations or rules various Congressional statutes governing the District.

Being cognizant of this situation, Congress in enacting the local Administrative Procedure Act, defined the term "rule" as "the whole or any part of any Commissioner's, *Council*'s, or agency statement ... designed to implement, interpret, or prescribe law or policy...." D.C.Code § 1–1502(6) (1973); and the term "rulemaking" as "Commissioner's, *Council*'s, or agency process for the formulation, amendment, or repeal of a rule." *Id.* § 1–1502(7). In the corresponding provisions of the current Code, the underscored words have been deleted. Hence, it is clear that the act of the Council, applicable to the agency action challenged here, was not "rulemaking" as covered by the provisions of § 1–1506. It is also apparent that in the enforcement of that Act, the Council did not delegate rulemaking authority to the agency.

In sum, we conclude that the agency has not engaged in "rulemaking" within the context of the DCAPA and that therefore its uniformly applied recoupment rate is effective without compliance with such statute.

*Affirmed.*