Samuel B. REICHLEY, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.

Washington Metropolitan Area Transit
Authority, Intervenor.

No. 85–253.

District of Columbia Court of Appeals.

Argued Dec. 16, 1985.
Decided Sept. 9, 1987.

---

Thomas J. Kelly, Jr., with whom Joseph H. Koonz, Jr., Roger C. Johnson, Carolyn McKenney, and Peter C. DePaolis, Washington, D.C., were on the brief, for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel at the time the briefs were filed, John H. Suda, Acting Corp. Counsel at the time the briefs were filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Michael L. Zimmerman, with whom Bruce D. White, Fairfax, Va., was on the brief, for intervenor.

Before FERREN and STEADMAN, Associate Judges, and GALLAGHER, Senior Judge.

FERREN, Associate Judge:

The Director of the Department of Employment Services (DOES) denied petitioner Reichley's claim for supplemental workers compensation benefits because Reichley had received compensation for the same period of disability under Virginia's compensation scheme. In doing so, the Director relied on his decision in *Ringgold v. Safeway Stores,* H & AS No. 83–157, OWC No. 15214 (Jan. 24, 1985), which he decided after Reichley had filed claims in both the District of Columbia and Virginia. *Ringgold* overruled the agency's earlier decision in *Herring v. Guest Services, Inc.,* H & AS No. 82–5, OWC No. 68 (March 30, 1983), which had held that the District of Columbia Workers' Compensation Act of 1979,

D.C. Code § 36–303(a)(1) (1981), permitted supplemental compensation, *i.e.,* payment of the difference between the benefits paid by a foreign jurisdiction and the higher benefits payable by the District if the claim had been entirely processed here.

Reichley contends that the Director's *Ringgold* analysis is erroneous. In the alternative, Reichley argues that, because he reasonably relied on *Herring,* the Director should not apply *Ringgold* retroactively to deny his claim for supplemental compensation. He also advances constitutional arguments. In a separate opinion issued today, this court holds that *Ringgold* is a permissible interpretation of § 36–303(a)(1). *Ringgold v. District of Columbia Department of Employment Services,* 531 A.2d 241 (D.C.1987) (relying on *Lee v. District of Columbia Department of Employment Services,* 509 A.2d 100 (D.C.1986), which sustained the Director's interpretation of D.C. Code § 36– 303(a)(1) to deny a claim filed in the District of Columbia if the claimant was also receiving benefits from another jurisdiction based on the same claim). We agree, however, that this new interpretation should not be applied retroactively. Accordingly, we reverse and remand.

I.

Petitioner, Samuel Reichley, was a bus driver for intervenor, Washington Metropolitan Area Transit Authority (WMATA). Reichley alleges that he suffered a hernia on July 19, 1983, while sharply turning his bus to the right. Despite the hernia, he continued working until August 3, 1983. From August 3 to September 26 he was off work, undergoing surgery to repair the hernia. While he was in the hospital, Reichley was informed that WMATA had refused his claim for hospitalization expenses. When he left the hospital, he sought legal advice. Reichley filed a claim with DOES alleging temporary, total disability. He sought benefits for the period from August 3 to September 26, 1983. WMATA controverted the claim.

Reichley alleges that his attorney subsequently advised him, in light of DOES'

recent decision in *Herring*, to file in addition a worker's compensation claim in Virginia, with the intention of receiving "benefits from whatever source as quickly as possible" and, if that were Virginia, of receiving supplemental benefits in the District. As a result, WMATA would "have to pay no more than the highest compensation allowed by any single jurisdiction." The parties stipulated that Reichley filed a claim in Virginia, that WMATA paid the Virginia claim at the rate of $277 per week for the period from August 3, 1983 to September 26, 1983,[1] and that the District's compensation rate, if payable, would be $295. Reichley, therefore, sought supplemental benefits of $18 per week under the District's higher compensation rate for the same seven and one-half week period.

At the hearing on May 24, 1984, before the Chief Hearing Examiner, WMATA argued, among other contentions, that pursuant to D.C. Code § 36–303(a)(1) (1981), Reichley's acceptance of compensation under the Virginia statute barred his receipt of supplemental benefits in the District. In her Recommended Compensation Order of July 20, 1984, the Examiner summarily rejected this argument and recommended supplemental benefits for Reichley for the reasons set forth in her Final Compensation Order in *Herring*.

As is now DOES' practice (which was not the case at the time of *Herring*), the Recommended Compensation Order was referred for review by the Director of DOES. He issued a Proposed Compensation Order on July 26, 1984, summarily adopting the Chief Hearing Examiner's recommendation. WMATA filed exceptions arguing again, among other contentions, that § 36–303(a)(1) barred Reichley's claim for supple-

mental benefits. Reichley filed a response urging the Director to adopt the Recommended Compensation Order.

In his Final Compensation Order of January 30, 1985, the Director, agreeing with WMATA, reversed his position. The Director relied on his six-day old decision in *Ringgold*, in which he had reexamined the holding of *Herring*.[2] He determined that an employee could not receive benefits under the District of Columbia Workers' Compensation Act of 1979

> for any period for which that employee received benefits under the law of another jurisdiction for the same injury. Thus, while an employee may file a successive claim for benefits, [D.C. Code § 36–303(a)(1)] limits the receipt of benefits to periods for which the employee has not already received benefits from another jurisdiction.

Reichley filed this appeal. Neither DOES nor WMATA filed cross-appeals.

## II.

█ Reichley argues, first, that the Director erroneously concluded that D.C.Code § 36–303(a)(1) (1981)[3] bars supplemental compensation for the same period of disability compensated under another state's law. We affirm the Director's construction of § 36–303(a)(1) in *Lee*, concluding that it was "reasonable and permissible." 509 A.2d at 105; *accord, Ringgold*, 531 A.2d 241, 242 (D.C.1987). Accordingly, we must reject Reichley's first argument.

## III.

Reichley also argues that DOES' new construction of § 36–303(a)(1) should not be applied retroactively to bar his claim. He

---

**1.** Reichley asserts that WMATA originally controverted both the District of Columbia and the Virginia claims; only when he persisted in the District of Columbia claim did WMATA voluntarily pay the Virginia claim. At any rate, it is undisputed that WMATA voluntarily paid the Virginia claim in late November 1983. Accordingly, there was no adjudication in Virginia.

**2.** The Director's Final Compensation Order in this case characterizes *Herring v. Guest Services, Inc.,* H & AS No. 82–5, OWC No. 68 (March 30,

1983) as holding "that employees could receive compensation under [the District of Columbia Workers' Compensation] Act even if those employees had received compensation under the laws of another jurisdiction."

**3.** D.C.Code § 36–303(a)(1) provides:

No employee shall receive compensation under this chapter and at the same time receive compensation under the workers' compensation law of any other state for the same injury or death.

stresses that (1) he reasonably had relied upon *Herring* in filing his Virginia claim after he had filed in the District, and (2) because DOES overruled *Herring* long after he had filed his claims in both jurisdictions, he did not have timely notice of the agency's completely different interpretation of the statute that would be applied to his claim, to his detriment. Accordingly, Reichley argues that DOES' new *Ringgold* interpretation should be applied prospectively, and thus that the *Herring* rule should be applied to him.

In adjudicating *Herring*, DOES announced a rule of law—permitting supplemental compensation—that would apply not only to the immediate parties but also to others who would present the same issue in future cases. Subsequently, in adjudicating *Ringgold*, DOES announced an altogether different rule of law—prohibiting supplemental compensation—to govern the same issue. In short, one generally applicable adjudicative rule replaced another, raising the question whether someone who had relied on *Herring* should suffer the impact of *Ringgold* when the claim was eventually adjudicated.

### A.

*Herring* had not been subjected to judicial review at the time DOES announced *Ringgold*. Thus, as the first step toward resolving the retroactivity issue, we must address the question whether anyone justifiably could have relied on *Herring* as "the law" or whether a claimant, instead, should have regarded *Herring* merely as an ephemeral agency interpretation of the statute without commanding legal significance until the appeals court resolved the issue.

█ In the first place, claimants properly could have assumed that DOES itself invited reliance on *Herring*. Despite an occasional reversal of direction as in *Ringgold*, agencies, like courts, must and do favor a policy of *stare decisis* unless unusual circumstances intervene. *See Greater Boston Television Corp. v. Federal Communications Comm'n*, 143 U.S.App. D.C. 383, 394, 444 F.2d 841, 852 (1970)

(stating that agencies may depart from their own precedent but in doing so must "supply a reasoned analysis" justifying the change), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971). On the other hand, a reviewing court has the last word in approving or rejecting an agency's interpretation of a statute. In our view, the issue of justifiable reliance on an agency adjudication not yet tested by judicial review turns primarily on the degree of deference a reviewing court owes to the agency's statutory interpretation. If, for example, one could say that, given our standard of review, this court very likely would have sustained *Herring* had it reached us—despite the agency's later-expressed views in *Ringgold*—then reliance on *Herring* as "the law" would have been justifiable. If, however, the agency's interpretation would not have provided a sound basis for predicting this court's reaction to *Herring*, then reliance on the agency adjudication would normally have been misplaced.

There can be no doubt about our policy of deference. In *Lee*, in considering the identical question presented in *Herring*, we applied the standard of review consistently invoked in such cases:

> [W]e must give great weight to any reasonable construction of a regulatory statute that has been adopted by the agency charged with its enforcement. [Citations omitted.] The interpretation of the agency is binding unless it is plainly erroneous or inconsistent with the enabling statute. [Citations omitted.] Consequently, we sustain the agency decision even in cases in which other, contrary, constructions may be equally as reasonable as the one adopted by the agency. [Citations omitted.]

509 A.2d at 102; *accord, Boyd v. District of Columbia Dept. of Human Services*, 524 A.2d 744, 747 (D.C.1987) (per curiam); *MCM Parking Co. v. District of Columbia Department of Employment Services*, 510 A.2d 1041, 1043–44 (D.C.1986); *Hughes v. District of Columbia Department of Employment Services*, 498 A.2d 567, 570 (D.C. 1985) (deferring to Director's rejection of an interpretation by the Hearing Examiner

of another provision at issue in *Herring* ); *Weaver Bros. Inc. v. District of Columbia Rental Housing Comm'n,* 473 A.2d 384, 388 (D.C.1984) (reversing agency); *Tenants of 3039 Q Street, N.W. v. District of Columbia Rental Accommodations Comm'n,* 391 A.2d 785, 787 (D.C.1978).[4]

Although we do not directly review *Herring* here, we would be hard pressed to say from the statutory language or from the Chief Hearing Examiner's analysis that *Herring,* any more than *Ringgold,* was an unreasonable interpretation of the Act. Moreover, we note that this court has already concluded "that the legislative history of the District of Columbia [Workers' Compensation] [A]ct [of 1979] reveals no extended discussions or comments throwing definitive light on the specific issue considered here [supplemental compensation under D.C. Code § 36–303(1) (1981) ]." *Lee,* 509 A.2d at 104 n. 4. Accordingly, we see no reason to believe that *Herring* would not have received the traditional deference accorded agency adjudications. We are therefore now in a position to discuss whether and how an adjudicative rule, such as *Herring,* is subject to a retroactivity/prospectivity analysis.

**4.** Our standard of review of an adjudicative rule—according great weight to any reasonable construction of a regulatory statute by the agency—is the same as the standard applicable when an agency uses the rule-making mechanism to construe a statute pursuant to an implicit delegation of legislative authority to fill in the gaps or to resolve ambiguities. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984) ("considerable weight"); *Hughes v. District of Columbia Dept. of Employment Services,* 498 A.2d 567, 570 (D.C.1985) ("great deference"). This contrasts with the somewhat more deferential standard applicable to explicitly authorized legislative rules. *Chevron U.S.A.,* 467 U.S. at 844, 104 S.Ct. at 2782–83 (legislative regulations adopted pursuant to "express delegation of authority ... are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute"). Traditionally, the least deferential standard of review has been applicable to so-called interpretative rules, whereby an agency informs the public what it thinks a statute means (as in program guidelines or informal rulings) without purporting to exercise law-making authority. *See General Electric Co. v. Gilbert,* 429 U.S. 125,

**B.**

Whether to give retroactive or prospective effect to a new agency rule announced through adjudication presents "a difficult and recurring problem in the field of administrative law." *Retail, Wholesale and Department Store Union v. National Labor Relations Board,* 151 U.S.App.D.C. 209, 217, 466 F.2d 380, 388 (1972). When agencies engage in rulemaking, they generally adopt formal regulations after notifying interested parties and according them an opportunity to comment at a hearing or otherwise. D.C.Code § 1–1506(a) (1987 Replacement); *see Retail, Wholesale,* 151 U.S.App.D.C. at 217, 466 F.2d at 388. Although regulations adopted through rulemaking may be applied retroactively when not inconsistent with prior law, *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 984 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978), they normally apply prospectively because they usually effect a change in settled law. A "fundamental unfairness would inevitably result" if new regulations were applied to "parties who had previously established their legal positions in reliance upon the former regulations." *1880 Columbia Road, N.W., Tenants' Ass'n v.*

141, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976) (because Congress "did not confer upon the EEOC authority to promulgate rules or regulations pursuant to" Title VII, "courts properly may accord less weight to [EEOC] guidelines than to administrative regulations which Congress has declared shall have the force of law"); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (weight to be accorded interpretative rule "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control"). For a comparison of legislative and interpretative rules, *see generally Batterton v. Francis,* 432 U.S. 416, 424–25 & n. 9, 97 S.Ct. 2399, 2405 & n. 9, 53 L.Ed.2d 448 (1977); *National Latino Media Coalition v. Federal Communications Comm'n,* 259 U.S.App.D.C. 481, 485–86, 816 F.2d 785, 789–90 (1987); *Gibson Wine Co. v. Snyder,* 90 U.S.App.D.C. 135, 137, 194 F.2d 329, 331 (1952); 2 K. Davis, ADMINISTRATIVE LAW TREATISE §§ 7:8 to 7:17 (2d ed. 1979); B. Schwartz, ADMINISTRATIVE LAW § 4.6 (2d ed. 1984). How these comparative analyses fare after *Chevron U.S.A., supra,* is open to question.

*District of Columbia Rental Accommodations Comm'n,* 400 A.2d 333, 338 (D.C. 1979); *accord, Anderson, Clayton,* 562 F.2d at 984.

Because an administrative agency usually has " 'the ability to make new law prospectively through the exercise of its rulemaking powers, it has less reason [than a court] to rely upon *ad hoc* adjudication to formulate new standards of conduct.' " *National Labor Relations Bd. v. Majestic Weaving Co.,* 355 F.2d 854, 860 (2d Cir. 1966) (quoting *Securities & Exchange Comm'n v. Chenery Corp.,* 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947)). *But see Boyd,* 524 A.2d at 747 (department takes position it lacks general rulemaking authority). Indeed, agencies have received "substantial and repeated scholarly and judicial criticism" for using adjudication as a way to effect a retroactive change in the law by avoiding the rulemaking process. *Retail, Wholesale,* 151 U.S.App.D.C. at 217, 466 F.2d at 388.[5] This is not to say, however, that application of an agency's new adjudicative rule to the parties before it, as well as to others whose cases are pending, is automatically suspect. To the contrary, rules created during agency adjudication—in contrast with regulations adopted through administrative rulemaking—traditionally apply retroactively, at least to the immediate parties to the dispute, for two reasons. *See Majestic Weaving,* 355 F.2d at 860.

In the first place, an agency's use of adjudication to announce a new rule usually means the law is unsettled; the decision usually does not change an established rule on which a party has reasonably relied. In the typical case, therefore, agency adjudication presents no issue of retroactivity in the sense that the agency confronts a settled rule in the way of its decision to adopt a different rule.

Second, the practical benefits from allowing agencies to develop law, on occasion, through adjudication to some extent justify the retroactive rulemaking traditionally associated with adjudication. More specifically, certain areas of administrative regulation are better suited to case-by-case development than to more general prospective pronouncements; an agency legitimately may determine that it is preferable to develop detailed rules in a piecemeal fashion, waiting to decide issues until they arise in the varying circumstances of particular cases and thus tailoring its decisions to the narrow facts of individual disputes. *National Labor Relations Board v. Bell Aerospace Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 1771–72, 40 L.Ed.2d 134 (1974); *Chenery Corp.,* 332 U.S. at 202–03, 67 S.Ct. at 1580–81; *Leedom v. International Brotherhood of Electrical Workers, Local Union No. 108,* 107 U.S.App.D.C. 357, 361, 278 F.2d 237, 241 (1960). As a consequence, because the parties to agency adjudication are engaged in a real controversy, they ordinarily should be entitled to a decision that allocates the benefits and burdens of the new rule among the parties themselves, as in a court of law; adjudications normally are not intended to result in advisory opinions.

On the other hand, agencies sometimes adopt rules through adjudication that would have been a proper subject for rulemaking, for occasionally agency adjudications, like rulemaking proceedings, overturn settled law. *See Majestic Weaving,* 355 F.2d at 860–61 (dicta). Of course, " 'every case of first impression has a retroactive effect' " in the sense that a definitive interpretation is eventually given to an earlier enactment. *Id.* at 860 (quoting *Chenery Corp.,* 332 U.S. at 203, 67 S.Ct. at 1580–81). But—of particular significance to the instant case—"the problem of retroactive application has a somewhat different aspect in cases not of first but of second impression, where an agency alters an established rule defining permissible conduct which has been generally recognized and

---

5. DOES has authority to announce interpretations of the District of Columbia Workers' Compensation Act of 1979 through formal rulemaking, as well as adjudication. D.C. Code § 36-302(a); *Hughes v. District of Columbia Department of Employment Services,* 498 A.2d 567, 570 (D.C.1985). No party to this proceeding questions the propriety of the agency's adjudicating the issue presented in this case.

relied on throughout the industry that it regulates." *Id.* Fairness, therefore, may demand purely prospective application of an adjudicative rule when the conditions that ordinarily justify adjudication instead of rulemaking do not hold; for example, when a party to an adjudication announcing or applying a new rule reasonably relied, as did Reichley, on a different rule established by an earlier agency adjudication. *Retail, Wholesale,* 151 U.S.App.D.C. at 217–19, 446 F.2d at 388–90; *Majestic Weaving,* 355 F.2d at 860–61. In such a case, the relying party would be treated as unfairly by the application of a new adjudicative rule as by the retroactive imposition of a new rule adopted through the rulemaking mechanism.

Nonetheless, when an agency announces a rule through adjudication that reflects a change in agency policy, the new rule will not be given the virtually automatic prospective effect that it would as the product of agency rulemaking; the tradition of retroactive adjudication is strong, whether in agencies or in the courts. Accordingly, agencies and the courts determine whether an agency's new adjudicative rule shall apply retroactively or prospectively by employing criteria similar to those used in civil and criminal adjudications. We turn to that analysis.

### C.

A retroactivity/prospectivity determination "is a question of law." *Retail, Wholesale,* 151 U.S.App.D.C. at 218, 466 F.2d at 390. Accordingly, when an agency announces a rule that differs from a previously prevailing rule, courts review an agency's decision to apply the new rule retroactively "with no overriding obligation of deference to the agency decision" and frequently "decline[ ] to enforce administrative orders when in their view the integrity of retroactive application has not been counterbalanced by sufficiently significant statutory interests." *Id.* (citations omitted).

This court has not had occasion to address the circumstances under which an agency adjudication overruling the agency's prior precedent may be applied, retroactively, to cases already filed.[6] However, in *Mendes v. Johnson,* 389 A.2d 781 (D.C. 1978) (en banc), we announced the criteria by which we would determine whether our judicial decisions, overruling precedent in civil cases, would be applied retroactively, or retroactively to benefit only the litigants but otherwise prospectively, or altogether prospectively.[7] Similarly, applying Supreme Court analyses, we have resolved retroactivity/prospectivity issues in a number of criminal cases.[8] We are mindful, moreover, that the Supreme Cou~~ has stat-

---

**6.** *But see Chapin Street Joint Venture v. District of Columbia Rental Housing Comm'n,* 466 A.2d 414, 415–16 (D.C.1983) (per curiam) (petitioner on notice of Commission's change of informal practice specifying nature of proof required to justify hardship petition for rent increase).

**7.** In *Mendes,* 389 A.2d at 789, we concluded the following criteria are relevant for retroactivity/prospectivity analysis in civil cases: "(1) the extent of the reliance of the parties on the old rule (including the degree of justifiable reliance and hardship which might result to the litigants as a result of retrospective application); (2) avoidance of altering vested contract or property rights; (3) the desire to reward plaintiffs who seek to initiate just changes in the law; and (4) the fear of burdening the administration of justice by disturbing decisions reached under the overruled precedent."

**8.** *Langley v. United States,* 515 A.2d 729, 733 (D.C.1986), *adopting Robinson v. United States,* 513 A.2d 218, 222, 223–24 (D.C.1986) (Ferren, J., dissenting); *Kirk v. United States,* 510 A.2d 499

(D.C.1986); *Gary v. United States,* 499 A.2d 815, 830–33 (D.C.1985) (en banc), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 725 & 106 S.Ct. 3279, 89 L.Ed.2d 725 (1986); *Brodis v. United States,* 468 A.2d 1335 (D.C.1983). In criminal cases, we have held that a threshold requirement for prospectivity of a judicial decision is its "clear break with the past." *E.g., Langley,* 515 A.2d at 733; *Robinson,* 513 A.2d at 223 (Ferren, J., dissenting), *adopted by, Langley,* 515 A.2d at 733; *Brodis,* 468 A.2d at 1337; *see Gary,* 499 A.2d at 831 (when rule is new, reliance on old practice carries "common sense presumption of reasonableness" unless new rule had been foreshadowed). The Supreme Court, however, recently rejected the "clear break" doctrine and held that new criminal rules announced by the court shall apply to all cases pending on direct review at the time of decision, whether or not the new rule represents a clear break with settled law. *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 715–18, 93 L.Ed.2d 649 (1987).

ed that the question whether an administrative adjudication may be applied retroactively requires, as in civil and criminal cases, a balancing approach. *See Bell Aerospace Co.*, 416 U.S. at 295, 94 S.Ct. at 1772; *Chenery Corp.*, 332 U.S. at 203. The United States Court of Appeals for the District of Columbia Circuit has often elaborated such an approach. *E.g., Clark-Cowlitz Joint Operating Agency v. Federal Energy Regulatory Comm'n*, 826 F.2d 1074 (D.C.Cir.1987) (en banc); *Retail, Wholesale*, 151 U.S.App. D.C. at 216–22, 466 F.2d at 387–93; *Leedom*, 107 U.S.App. D.C. at 360–63, 278 F.2d at 240–43 (discussed in *Mendes*, 389 A.2d at 790 n. 23).[9]

■ Combining *Mendes* with *Retail, Wholesale*, and drawing, as appropriate, on language from our decisions in criminal cases, *supra*, notes 7–9, we conclude that administrative agencies, and ultimately the courts, should apply four factors in determining whether an agency's adjudication announcing a new rule of law should be applied retroactively or prospectively:

(1) whether the decision is a "clear break with the past" precedent or was foreshadowed by trends in the law;

(2) the extent to which the party against whom the new decision is invoked reasonably relied upon the old rule, including the nature and degree of the burden a retroactive decision would impose on that party;

(3) the importance of rewarding the real party in interest, if any, who initiated the agency's changed decision; and

(4) whether administering both the new and the old rules for some period of time would pose a severe administrative burden or otherwise interfere with a significant statutory interest.[10]

### D.

■ Applying the four factors to this case, we conclude that DOES erred in applying its new construction of § 36–303(a)(1) in *Ringgold* retroactively to cases filed after *Herring*. First, *Ringgold* was a clear break from *Herring;* indeed, the Director acknowledged in his Final Compensation Order in this case that *Herring* and *Ringgold* were invariably at odds. *See supra*, note 2. Under *Herring*, Reichley could have recovered supplemental benefits in the District; under *Ringgold*, he could not. Additionally, Reichley had no notice or "intimation" that DOES would overrule *Herring* until the Director did so in *Ringgold* on January 24, 1985, long after Reichley had relied on *Herring* in electing also to file in Virginia.[11]

Second, Reichley reasonably relied on *Herring* in the hope of obtaining needed benefits from either jurisdiction as soon as possible and, if from Virginia, with the expectation of receiving supplemental benefits from the District. *See Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 284–85, 100 S.Ct. 2647, 2662–63, 65 L.Ed.2d 757 (1980) (plurality opinion). This conclusion, however, requires considerable elaboration. Under the predecessor to the District of Columbia Workers' Compensation Act of 1979—the District of Columbia

---

9. In *Retail, Wholesale,* 151 U.S.App.D.C. at 219, 466 F.2d at 390, the D.C. Circuit has concluded that, "[a]mong the considerations that enter into a resolution of the problem" of whether an agency's adjudication shall be applied retroactively, or prospectively, are: "(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard."

10. *Mendes'* second factor, the avoidance of altering vested contract or property rights, is not presented in this case, nor is it often at issue in administrative decisions, since contract and property rights are not generally subject to administrative regulation. We do not, however, preclude application of this factor in an appropriate case.

11. The fact that employers challenged *Herring* does not adequately notify employees that the agency intended to alter its interpretation. Mere challenges, as such, do not foreshadow a change in the law.

Workmen's Compensation Act of 1928, D.C. Code § 36–501 (1973) (incorporating the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 to 950 (1982))—courts had allowed supplemental compensation, even though the Longshore Act contained no explicit provision allowing such benefits. *E.g., Calbeck v. Traveler's Insurance Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962); *cf. United Brands Co. v. Melson*, 594 F.2d 1068, 1074–75 (5th Cir.1979) (allowed double recovery for same injury under facts of case).

In crafting the District of Columbia Workers' Compensation Act of 1979, however, the Council of the District of Columbia inserted the language of § 36–303 (a)(1), *supra*, note 3, which was not contained in the Longshore Act. On its face, this section arguably eliminated supplemental benefits, although the Council's intent was nowhere explained in the Act's legislative history. *Lee*, 509 A.2d at 104 n. 4. Furthermore, in his article, *The New Act in Town: A Guide to the D.C. Workers' Compensation Act of 1979*, 6 DISTRICT LAWYER 26, 28 (May/June 1982), Gerald Herz opined that § 36–303 would "stop the previous practice of claims initially being filed in Maryland or Virginia and, once benefits have been exhausted under the state act, filing for additional benefits in the District of Columbia." Thus, if Reichley had filed his claim in 1982, before *Herring*, he probably "should have known that the old rule" under the Longshore Act "was about to be changed, because of either judicial or legislative intimations to that effect." *Mendes*, 389 A.2d at 790. But Reichley had no occasion to file at that time.

On March 30, 1983, DOES purported to resolve any uncertainty as to whether the District of Columbia would allow supplemental compensation under its new § 36–303(a)(1). On that date, DOES published an interpretation of § 36–303(a)(1) in *Herring*, concluding that the Act did not preclude supplemental compensation; it precluded only double recovery.[12] Although announced through adjudication, the *Herring* rule was an interpretation of law by DOES entitled to the deference recognized by our caselaw discussed above—unless and until retracted or declared invalid.

Until *Ringgold* overruled *Herring*, DOES intended *Herring* to be an authoritative, not merely advisory, interpretation having precedential effect. Counsel for DOES acknowledged at oral argument that the Director had adopted *Herring*, recognizing its precedential value, before he overruled it. More specifically, that the agency intended to make *Herring* a precedential rule, rather than an advisory ruling, is indicated not only by the Chief Hearing Examiner's reliance on *Herring* to dispose of the employer's argument in this case, but also by the Director's own reliance on *Herring* during initial review of the Examiner's recommended compensation order. Only after the Director reviewed WMATA's exceptions to this interpretation, as well as the exceptions of other parties in *Ringgold* and *Lee*, did he decide to overrule *Herring* as to supplemental compensation for the same period of disability.[13]

Furthermore, as we noted earlier, the legislative history of the District of Columbia Workers' Compensation Act of 1979 provides no grounds for favoring one or the other interpretation advanced in *Herring* and *Ringgold*. *Cf. Lee*, 509 A.2d at 104 n. 4. For this reason, DOES' interpretation of § 36–303(a)(1) in *Herring* was of considerable significance, for it not only filled a void in the legislative history but

---

**12.** There was a question at oral argument whether *Herring* was an agency precedent, since the decision, captioned "Final Compensation Order," was issued by the Chief Hearing Examiner, not by the Director. Counsel explained that at the time *Herring* was issued, March 30, 1983, the Director did not automatically review hearing examiner's orders. The practice has since changed. Under DOES' current procedure, a hearing examiner's "Recommended Compensation Order" would not have binding effect on

the Director. *See Chapin Street Joint Venture*, 466 A.2d at 416 (Rental Housing Commission is not barred by prior decisions of Rental Administrator).

**13.** Employer-intervenor, WMATA, also recognized the precedential value of *Herring* in its exceptions, for WMATA urged the Director to overrule, not merely ignore, *Herring*.

also supplied an interpretation that arguably was at odds with a more likely meaning of the statutory language. *See* Herz, *The New Act in Town*, 6 DISTRICT LAWYER at 28.

Reichley, therefore, reasonably relied on *Herring* at the crucial juncture when, in August 1983, he filed in the District and, on the advice of counsel, subsequently filed in Virginia. Furthermore, Reichley relied to his detriment. If the new rule were applied retroactively, then by virtue of the fact that Reichley applied in Virginia, relying on *Herring,* he would lose the benefits of the District's higher compensation rate. This burden is not *de minimis. See Retail, Wholesale,* 151 U.S.App.D.C. at 221, 466 F.2d at 392.

As to the third factor, the real party in interest that encouraged the new rule, WMATA, is an institutional litigant with numerous cases before DOES. *E.g., Washington Metropolitan Area Transit Authority v. District of Columbia Department of Employment Services,* 506 A.2d 1127 (1986). Accordingly, WMATA will "reap the benefit of the new rule of law in succeeding cases," *Mendes,* 389 A.2d at 791 (citation omitted). Furthermore, although WMATA urged the new rule in its exceptions filed with the Director in this case, the Director announced the new rule in *Ringgold.* In a sense, therefore, retroactive application here would reward WMATA, to some extent, for Safeway's advocacy in *Ringgold* (as well as for the employer's arguments in *Lee* ).

Finally, we must consider DOES' statutory and administrative interests in retroactively applying its *Ringgold* decision. Any time a new rule is announced and applied prospectively, there will be some administrative inconvenience in administering both the new and the old rules simultaneously. *See* R. Weaver, *Retroactive Regulatory Interpretations, An Analysis of Judicial Responses,* 61 NOTRE DAME L.REV. 167, 212–16 (1986). The administrative burden must be severe, however, to overcome a party's justifiable and detrimental reliance on an old rule. Unless the burden of applying the new rule to the party who relied on

the old rule "is *de minimis,* or the newly discovered statutory design compels its retroactive application, the principles which underlie the very notion of an ordered society, in which authoritatively established rules of conduct may fairly be relied upon, must preclude its retroactive effect." *Retail, Wholesale,* 151 U.S.App.D.C. at 221, 466 F.2d at 392; *cf. Leedom,* 107 U.S.App. D.C. at 362–63, 278 F.2d at 242–43 (NLRB's new rule applied retroactively because simultaneous administration of the new and old rules to labor contracts of five years duration would be an "administrative monstrosity").

DOES never has explained why it has decided to apply *Ringgold* retroactively; the Director simply has done so. Nor has DOES, in its brief on appeal, elucidated what, if any, statutory or policy interest there is in applying *Ringgold* retroactively. DOES has demonstrated no severe administrative burden in implementing two rules, one for those claims filed between *Herring* (March 30, 1983) and *Ringgold* (January 24, 1985), and another for the claims filed before *Herring* or after *Ringgold.* The record does not indicate that this would be an unreasonable administrative burden on DOES. Consequently, upon motion, DOES must reconsider its decisions in those cases filed between *Herring* and *Ringgold* and decided before this opinion.

### E.

In sum, if an agency's adjudication is a clear break with the past and a party reasonably relied to its detriment on the previous rule, then the new rule should be applied prospectively, unless the agency (or real party in interest) can demonstrate that this reliance interest is outweighed because prospective application would impose a severe administrative burden, otherwise interfere with a significant statutory interest, or fail to provide an essential reward to those who innovate change. *Retail, Wholesale,* 151 U.S.App.D.C. at 221, 466 F.2d at 392; *see Mendes,* 389 A.2d at 789–91; *cf. 1880 Columbia Road,* 400 A.2d at 338 (rulemaking). In this case, Reichley reasonably relied to his detriment on the

*Herring* rule. DOES has failed to demonstrate a severe administrative burden or interference with a significant interest if the *Ringgold* rule is applied prospectively. WMATA, as an institutional litigant, will benefit from *Ringgold* and thus need not be additionally rewarded by its retroactive application. Accordingly, DOES erred in applying in this case its new construction of § 36–303(a)(1) announced in *Ringgold*, rather than its earlier interpretation announced in *Herring*.[14]

*Reversed and remanded.*

GALLAGHER, Senior Judge, concurring:

I agree that, as the court states in section F of its opinion, because of the circumstances involved the agency's decision in *Ringgold* should be construed as being prospective in this case. As the court states, this petitioner reasonably relied upon the agency's prior *Herring* decision to his detriment.

On this basis, I agree with the court's opinion, and concur in the result reached.

---

**14.** In view of our disposition, we need not address Reichley's constitutional arguments. WMATA raised several issues, in addition to those addressed in this opinion, in WMATA's exceptions to the Director's Proposed Compensation Order. The Director did not address these other issues. WMATA failed to cross-appeal. Once WMATA intervened, it was barred by *res judicata* as to all issues that could have been raised on appeal, whether or not in fact raised. *See Dankman v. District of Columbia Board of Elections and Ethics,* 443 A.2d 507, 518, 522 (1981) (Ferren, J., concurring in the result and joined by a majority of the court) (en banc).