Barbara **MASON**, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

and

**Capitol Holiday Inn, and St. Paul Fire & Marine Insurance Company, Intervenors.**

No. 88–376.

District of Columbia Court of Appeals.

Argued June 19, 1989.
Decided Aug. 11, 1989.

---

William J. Carter, Washington, D.C., for petitioner.

Frederick D. Cooke, Jr., Corp. Counsel, with whom Charles L. Reischel, Deputy Corp. Counsel, and Susan S. McDonald, Asst. Corp. Counsel, Washington, D.C., filed a statement in lieu of a brief, for respondent.

Geoffrey S. Gavett, with whom Michael F. Flynn, Jr., Rockville, Md., was on the brief, for intervenors.

Before BELSON and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

**1.** *See* D.C.Code § 36–308(5) (1988 Repl.).

PER CURIAM:

Petitioner seeks review of a decision of the D.C. Department of Employment Services (DOES) awarding her partial disability payments under the D.C. Workers' Compensation Act. D.C.Code §§ 36–301 to 36–345 (1988 Repl.). She contends that DOES erred in computing both the amount of her post-injury wages and her wage loss. Specifically, she argues (1) that payments made by her employer to a taxicab company to provide for her transportation to and from work after her injury should not be included in determining her post-injury wages; and (2) that DOES erred in calculating her wage loss on the basis of her income as of the time of her injury rather than on the basis of what it would have been, absent injury, at the time of her maximum medical improvement. Although we determine that DOES properly calculated the wage loss, we agree with petitioner's first contention and therefore must reverse.

I

The facts necessary to a resolution of the issues raised in this case are few; we mention them only briefly here. On February 5, 1983, petitioner injured her back while working as a housekeeper for her employer. She returned to work in a light-duty capacity on January 7, 1985, but did not work between April 1 and May 3, 1985.

Petitioner applied for disability benefits. A hearing examiner recommended that petitioner be awarded temporary partial disability payments based on 66⅔ percent of her wage loss[1] for the period January 7 through March 31, 1985, and May 4 through June 26, 1985. The examiner further recommended an award of permanent partial disability based on 66⅔ percent of her wage loss[2] commencing June 27, 1985. The foregoing is not challenged on appeal.

In reaching this conclusion, the examiner determined that the wage loss should be the difference between petitioner's stipulated average weekly wage before becoming disabled and her actual post-injury

**2.** *See* D.C.Code § 36–308(3)(V) (1988 Repl.).

earnings. The examiner further concluded that petitioner's post-injury earnings should include amounts paid by her employer directly to a taxicab company which transported her back and forth to work. These determinations were affirmed by the Director of DOES. This appeal followed.

## II

In reviewing a final DOES decision, we are limited to a determination whether "the findings of fact, upon which the compensation authorities based their decision, are supported by substantial evidence in the record and whether the ultimate decision is in accordance with the law." *Wright v. District of Columbia Department of Employment Services*, 560 A.2d 509, 510 (D.C. 1989) (citing *Gomillion v. District of Columbia Department of Employment Services*, 447 A.2d 449, 450–51 (D.C.1982); D.C.Code § 1–1510(a)(3)(E) (1987 Repl.)); *see also Cohen v. District of Columbia Rental Housing Comm'n*, 496 A.2d 603 (D.C.1985). As the factual findings in this case are not in dispute, we turn to examine DOES' legal conclusions.

## A.

▮ Because of the injury petitioner suffered and her subsequent disability, when she resumed working she was unable to walk or use public transportation to get to and from her workplace. Instead, her employer arranged for a taxicab to transport her each day. The employer made direct payments to the cab company to cover the costs of that transportation. DOES determined that these payments should be included in computing petitioner's post-injury wages. We conclude, however, that such a determination is counter to both the relevant statute and settled principles of law.

▮ In computing wages, the ultimate objective is to ascertain the *true* economic benefit to the claimant. It is therefore generally recognized that not only wages and salary are included in those computations, but other things of value received in consideration for the work such as commissions, *see, e.g., Miller v. Ben's Service Station, Inc.*, 417 So.2d 266 (Fla.Dist.Ct.App.

1982); bonuses, *see, e.g., U.S. Fidelity & Guaranty Co. v. Branch*, 178 Ga.App. 853, 344 S.E.2d 714, *cert. denied*, (1986); *Sullivan v. Empire Equipment Engineering Co.*, 492 A.2d 1212 (R.I.1985); room and board, *see, e.g., Roadway Express, Inc. v. Workmen's Compensation Appeal Board*, 110 Pa.Cmwlth. 535, 532 A.2d 1241 (1987); *O'Neil v. William Randolph Dairy Farm*, 65 A.D.2d 907, 410 N.Y.S.2d 695 (1978); and tips, *see, e.g., Romero v. U–Let–Us Skycap Services, Inc.*, 740 P.2d 1004 (Colo. Ct.App.1987); *Deason v. Travelers Ins. Co.*, 242 So.2d 906 (La.Ct.App.1971).

However, it is also recognized that "amounts paid an employee as reimbursement for expenditures which he is called upon to make in the course of his employment, in activities which he has no occasion to pursue when not employed, are not part of his earnings for the purpose of fixing workmen's compensation." 88 Am.Jur.2d *Workmen's Compensation* § 371 (1976). Thus, "[a] car allowance is includable as wage only if it exceeds actual ... travel expenses." 2 A Larson, Workmen's Compensation Law § 60.12(a), at 10–631 to 10–632 (1987); *see Moorehead v. Industrial Comm'n*, 17 Ariz.App. 96, 98, 495 P.2d 866, 868 (1972); *accord, Hairston v. Galliher & Hughley*, H & AS No. 84–11, slip op. at 8 (D.C. Department of Employment Services 1985).

The rationale for this exception is fairly straightforward. Unlike payments such as tips and bonuses, travel expense payments do not constitute true economic benefit; rather, they are simply reimbursements to the claimant for expenses she or he would not otherwise incur. *See Bosworth v. 7–Up Distributing Co. of Fredericksburg*, 4 Va.App. 161, 163–64, 355 S.E.2d 339, 341 (1987) (automobile expenses); *Weingarten v. Democrat & Chronicle*, 19 A.D.2d 566, 566, 239 N.Y.S.2d 980, 981 (1963) (same); *cf. Layne Atlantic Co. v. Scott*, 415 So.2d 837, 839 (Fla.Dist.Ct.App.1982) (motel expenses).

It is evident that the payments to the cab company were in the nature of reimbursements. The payments were made directly to the cab company in the exact amount

owed. If the employer had ceased paying the allowance because petitioner no longer incurred those expenses, she would not have suffered any economic loss. Thus, as the payments constitute no true economic benefit to petitioner, they are not properly subject to inclusion as wages.

This conclusion is consistent with the relevant District of Columbia compensation statute. Section 36–301(19) (1988 Repl.) of the District of Columbia Workers' Compensation Act defines wages as

> the money rate at which the *service rendered* is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging *or similar advantage* received from the employer, and gratuities received in the course of employment from other than the employer.

(Emphasis added).[3] First, the cab payments are not of the same nature as board, rent or lodging, and thus cannot be considered to be a "similar advantage" as contemplated by the legislature, *cf. Glinka v. Workman's Compensation Appeal Board,* 75 Pa.Cmwlth. 504, 509, 462 A.2d 909, 912 (1983) (amounts paid to reimburse claimant for mileage travelled not includable in determining wage without express legislative authority for that inclusion); nor can the payments be considered "gratuities received in the course of employment." Finally, the payments were not recompense for "services rendered"—they were reimbursements—and thus do not fall within the statute's scope. *Cf. Dickerson, Inc. v. McCleary,* 498 So.2d 651, 652 (Fla.Dist.Ct. App.1986) (amount paid by employer to employee for use of his equipment not includable in wage calculation since statute speaks of "service" rendered).

DOES' determination in this instance is contrary to settled principles of law as well as the workers' compensation statute. We

must therefore reverse it. *See Public Employee Relations Board v. Washington Teachers' Union Local 6, AFT,* 556 A.2d 206, 207 (D.C.1989); *Reichley v. District of Columbia Department of Employment Services,* 531 A.2d 244, 247 (D.C.1987); D.C.Code § 1–1510(a)(3)(A) (1987 Repl.).

**B.**

■ Petitioner next argues that DOES erred in computing the amount of her wage loss to be the difference between her average weekly pre-injury wage and her post-injury wage. Rather, she contends that her wage loss is equal to the difference between her average pre-injury wage and her wage at the time of her maximum medical improvement—a date some time after she suffered the injury. We disagree.

Resolution of this issue requires reference to several portions of the statute. D.C.Code § 36–311(a) (1988 Repl.) states that "the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation...." Section 36–308(5) states that "in case of temporary partial disability ... [w]age loss shall be the difference between the employee's average weekly wage before becoming disabled and the employee's actual wage after becoming disabled." Wage loss is calculated in the same manner for permanent partial disability. *See* D.C.Code § 36–308(3)(V). Finally, D.C.Code § 36–301(8) (1988 Repl.) defines the term "disability" as a "physical or mental incapacity because of injury which results in the loss of wages."

Reading these sections together, we conclude that DOES' interpretation of the statute as requiring the compensation rate for permanent partial disability to be based on the difference between petitioner's pre-injury and post-injury wages is neither unrea-

3. Compare the language of the Longshoremen's and Harbor Workers' Compensation Act, ch. 509, § 1, 44 Stat. 1424 (1927) (codified as amended at 33 U.S.C. §§ 901 *et seq.* (1981 & Supp. V 1987)), the predecessor to the District's present compensation law, which defines wages as: "the money rate at which the service rendered by an employee is compensated by an employer under the contract of hiring in force at the time of the injury, including the reasonable value of any advantage which is received from the employer and included for purposes of any withholding tax.... The term wages does not include fringe benefits...."

sonable in light of prevailing law, nor plainly erroneous. *See Washington Teachers' Union Local 6, AFT, supra,* 556 A.2d at 207; *Reichley, supra,* 531 A.2d at 247; *see also MCM Parking Co. v. District of Columbia Department of Employment Services,* 510 A.2d 1041, 1043–44 (D.C.1986) (when "both the Department and the petitioners make cogent though conflicting arguments concerning the proper construction of the statute ... we defer to [the] agency's interpretation").

In addition, the DOES interpretation is consistent with the ordinary meaning of the language of the compensation statute. *See* D.C.Code § 36–308(3)(V) ("Wage loss shall be the difference between the employee's average weekly wage before becoming disabled and the employee's actual wages after becoming disabled."); *cf. Walker v. WMATA,* 253 U.S.App.D.C. 248, 252, 793 F.2d 319, 323 (1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987) (interpreting Longshoremen's and Harbor Workers' Compensation Act). We therefore affirm the agency's ruling on this issue.

*Affirmed in part, reversed in part, and remanded for further consideration consistent with this opinion.*