**WEAVER BROS., INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION,**
**Respondent.**

**No. 82–1242.**

District of Columbia Court of Appeals.

Argued Oct. 13, 1983.

Decided March 13, 1984.

Richard W. Luchs, Washington, D.C., for petitioner.

Lutz Alexander Prager, Asst. Corporation Counsel, Washington, D.C., with whom Judith W. Rogers, Corporation Counsel, Washington, D.C., at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, Washington, D.C., were on brief, for respondent.

William E. Rollow, Washington, D.C., with whom Jo V. Morgan, Jr., and John J. Brennan, III, Washington, D.C., were on brief, for amicus curiae Cafritz Company.

Before NEBEKER, BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

This appeal requires interpretation of D.C.Code § 45–1519(e) (1981), a provision of the Rental Housing Act of 1980 that concerns rent increases during the term of a written lease. Respondent Rental Housing Commission (RHC) held that § 45–1519(e) prohibits a landlord from enforcing a written lease clause that purports to permit the landlord to raise the rent during the term of a written lease agreement. We disagree with the RHC, and hold that petitioner Weaver Bros., Inc., did not violate § 45–1519(e) by raising a tenant's rent in the amount authorized by a general cost-of-living increase in the rent ceiling during the term of the written lease.

In September 1980, tenant Marvin L. Brown signed a written lease form drafted by Weaver Bros., a rental agent representing the landlord. The lease provided that the agreement would run

> for the term of twelve (12) months commencing on the 1st day of October 1980, and fully ending at Midnight on the 30th day of September 1981, at and for the total rental of Four Thousand Eight Hundred Seventy Two and no/100 Dollars ($4,872.00), payable in equal monthly installments of $406.00.

The lease also stated in paragraph 32 that:

> IT IS FURTHER UNDERSTOOD AND AGREED, notwithstanding anything to the contrary herein, that tenant agrees to pay as additional rent during the term of this lease, such additional sums, if any, as Landlord may be permitted to charge from time to time, under any applicable Federal or District of Columbia legislation or in the absence of any such legislation, such additional sums as Landlord in its sole and absolute discretion may determine, but in no event during the term of this lease, shall the rental exceed $_____, per month. Any such notice or notices of increase shall be in conformity with said legislation.

The parties did not fill in the space provided for setting a cap on the rent increase.

In early 1981, the Rental Housing Commission authorized a general rent increase for all landlords. The RHC acted under D.C.Code § 45–1517(b) (1981), which authorizes it to adjust the rent ceiling every year in accord with changes in the cost of living. Weaver Bros. informed Mr. Brown that because of the RHC's action, his rent would rise from $406 to $447 a month beginning on May 1, 1981. Five months remained in Mr. Brown's 1-year lease term.

The RHC affirmed a Hearing Examiner's decision that the mid-term rent increase violated § 45–1519(e). That provision reads:

Notwithstanding any other provis[i]on of this chapter, no rent shall be adjusted under this chapter for any rental unit with respect to which there is a valid written lease or rental agreement establishing the rent for such rental unit for the term of such written lease or rental agreement.

The RHC relied on this court's decision in *Interstate General Corp. v. District of Columbia Rental Accommodations Comm'n,* 441 A.2d 252 (D.C.1982). There, tenants had signed a 1-year residential lease for a fixed rent. A paragraph of the lease provided that the landlord could raise the rent if the United States Department of Housing and Urban Development (HUD), which set the rent for the unit, authorized an increase. The lease, however, did not state what the rights of the parties would be if HUD authorized an increase during the 1-year period of fixed rent. The landlord raised the rent when the RHC granted a cost-of-living increase under the predecessor of § 45–1517(b). The question in *Interstate General* was whether either the lease provision or § 45–1517(b) authorized a midterm rent increase.

This court disallowed the increase on three alternate grounds. First, we held that the lease was ambiguous as to whether the landlord could raise the rent in the middle of the term or only at its end. We construed the ambiguity against the drafter of the lease, the landlord. Thus, even if HUD had authorized a rent increase, the lease as construed would not have allowed the landlord to take advantage of the authorization until the end of the 1-year term. Second, we noted that HUD had not granted a rent increase. Instead, the landlord had raised the rent pursuant to the RHC's action under § 1517(b). Because the pass-through paragraph of the lease extended only to HUD-authorized rent increases, that paragraph did not permit the landlord to raise the rent. Third, we held that the general rent ceiling increase provisions of § 1517(b) could not of themselves authorize the rent increase; we noted that the identical predecessor of § 1519(e) "prohibits the adjustment of rent during the pendency of a fixed lease term." 441 A.2d at 255.

The question is whether any of the three *Interstate General* holdings controls the instant case. Weaver Bros. argues that the first holding does not control. We agree. The lease in *Interstate General* was ambiguous. Certain provisions implied that the landlord could increase the rent in the middle of the term, while others implied that the landlord had to wait until the end of the term. The Weaver Bros. lease is clear. The tenant agreed in paragraph 32 to pay as additional rent "during the term of this lease, such additional sums, if any, as Landlord may be permitted to charge from time to time, under any applicable Federal or District of Columbia legislation." There is no ambiguity here to construe against the drafter.

The second holding of *Interstate General* is also inapplicable. The pass-through paragraph in the Weaver Bros. lease can be triggered by "any applicable Federal or District of Columbia legislation." The RHC indisputably did authorize a § 1517(b) rent increase for all landlords. The provisions of the pass-through paragraph, if they are valid, thus were properly triggered.

The remaining question, then, is whether the third *Interstate General* holding prohibits Weaver Bros.' rent increase. That hold-

ing reads in its entirety, "The question remains as to whether the rent increases were authorized by [§ 1517(b), the rent ceiling increase provision]. The answer again is in the negative as [§ 1519(e) ] of the Act prohibits the adjustment of rent during the pendency of a fixed lease term." 441 A.2d at 255.

■ We conclude that this holding does not control this case because the statute being construed, § 1519(e), applies only where a valid written lease agreement establishes the rent for a rental unit for the term of the lease. Here, the lease did not establish the rent for the term of the lease.

■ Respondent contends that our third holding in *Interstate General* means that § 1519(e) flatly disallows any adjustment of rent in the middle of a term, regardless of lease provisions authorizing an increase. To resolve the question whether *Interstate General* reaches that far, we must examine closely the language of the section that our opinion there summarized.

Section 1519(e) declares that "no rent shall be adjusted under this chapter for any rental unit with respect to which there is a valid written lease or rental agreement establishing the rent for such rental unit for the term of such written lease or rental agreement." Weaver Bros. adjusted the rent under the chapter, and there was a valid written lease between Weaver Bros. and tenant. Our analysis must focus, then, on whether the lease "establish[ed] the rent" at $406 "for the term of such written lease," 1 year. We hold that the lease did

not do so. The lease obviously set the initial rent at $406 a month. But paragraph 32 allowed that initial rent to be raised during the 1-year term. "[N]otwithstanding anything to the contrary herein," that paragraph read, "tenant agrees to pay as additional rent during the term of this lease, such additional sums, if any, as Landlord may be permitted to charge from time to time." The parties did not even set an upper limit on the amount the rent could rise mid-term: the blank in paragraph 32 contains only typed dashes. The Weaver Bros. lease, read in its entirety, simply did not establish the rent at $406 per month for the whole 1-year term.

The foregoing draws a sharp and essential distinction between this case and *Interstate General.* After we resolved against the landlord the ambiguity in the lease there, that lease fell within § 1519(e). It was a "valid written lease . . . establishing the rent for such rental unit for the term of such written lease." Under those circumstances, we held that no increase in rent was permissible during the term of the lease.

We conclude, then, that the Weaver Bros. lease does not fall within § 1519(e)'s language. Nor can our holding in *Interstate General* fairly be read as a flat holding that any mid-term rent increase, regardless of lease provisions, violates § 1519(e); such a holding would have been contrary to the plain language of the statute. We must, therefore, reverse the RHC's decision below that Weaver Bros.' increase violated § 1519(e).[1]

---

1. Under the circumstances, we deem it unnecessary to turn to the legislative history of § 1519(e). It is, in any event, unilluminating. It consists of one sentence. In its analysis of the Rental Accommodations Act of 1975, the Council of the District of Columbia summarized § 1519(e)'s predecessor as follows: "Subsection 204(g) prohibits increases for rental units with valid written leases or rental agreements until the terms of such agreement have expired." *Hearing and Disposition on Rental Accommodations Act of 1975 Before the House Comm. on the District of Columbia,* 94th Cong., 1st Sess. 46 (1975). Counsel for the District of Columbia contended at oral argument that this

sentence shows that the Council intended § 1519(e) to set out a period of time—the term of the lease—during which the rent could not be changed. The Weaver Bros. lease had a 1-year term, it is argued, so the landlord could not raise the rent until the year was over. We think counsel places undue reliance on what appears to be no more than a brief summary of the language of the statute. That summary itself is somewhat ambiguous, because it speaks of the expiration of the "terms" of the lease, rather than the "term" of the lease. It can be said that one of the "terms" of the Weaver Bros. lease—the putative fixed monthly rent—would expire upon an authorization

We recognize that "[i]n reviewing the construction of a statute by the agency charged with its interpretation and enforcement, the agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the statute." *Totz v. District of Columbia Rental Accommodations Comm'n,* 412 A.2d 44, 46 (D.C.1980) (per curiam). Here the RHC's interpretation of § 1519(e) was inconsistent with the section's language.[2]

Respondent's brief alluded to unconscionability of mid-term rent increases as a reason for the legislature's adoption of § 1519(e). At oral argument, respondent pointed out for the first time that in its ruling in *Interstate General,* the RHC said that if it had needed to reach the issue, it would have held the lease there unconscionable. We deem the argument for unconscionability untenable here. Even assuming disparity in bargaining power, a lease term explicitly permitting a mid-term rent increase in conformity with an RHC-authorized increase in rent ceiling does not evince unconscionability. *Cf. Williams v. Walker-Thomas Furniture Co.,* 121 U.S.App.D.C. 315, 319-20, 350 F.2d 445, 449-50 (1965) (two elements required to establish unconscionability of contract: disparity in bargaining power and terms unreasonably favorable to the more powerful party); *Diamond Housing Corp. v. Robinson,* 257 A.2d 492, 493 (D.C.1969) (despite disparity between tenant's and landlord's bargaining power, lease provision not unconscionable because provision not unreasonable or unfair).[3] Accordingly, the order of the Rental Housing Commission is

*Reversed.*

for an increase. A reference to the "term" of the lease would have been a reference to the time period of the lease.

2. In view of our conclusion that the rent increase at issue was permissible, we do not reach petitioner's contention that the imposition of treble damages was impermissible.

3. We express no view as to the other provision of the lease, not before us here, allowing unspecified rent increases if rent control is lifted.