### Mark DeSHAZO, Petitioner,

v.

### DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

Contemporary Services and Fireman's Fund Insurance Company, Intervenor.

No. 92–AA–988.

District of Columbia Court of Appeals.

Argued Jan. 12, 1994.

Decided March 17, 1994.

David M. Schloss, Washington, DC, for petitioner.

Forest A. Nester, Washington, DC, for intervenor.

Before FERREN, STEADMAN, and SCHWELB, Associate Judges.

FERREN, Associate Judge:

Petitioner was injured while working for intervenor, his part-time employer. He applied for workers' compensation. *See* District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301 to –345 (1993). After a hearing, the Department of Employment Services (DOES) Hearings and Appeals Examiner awarded petitioner temporary total and permanent partial disability benefits.

The Examiner applied the principle of "wage stacking"—*i.e.,* he combined petitioner's wages from his full-time and part-time jobs—in calculating the "average weekly wage" used to compute petitioner's temporary total disability benefits; but the Examiner did not use wage stacking to compute petitioner's permanent partial disability benefits. The Director of DOES affirmed the decision, and petitioner brought this appeal to correct the claimed error in refusing to use wage stacking to calculate petitioner's permanent partial disability benefits. Because the issue is complex and the rationale for decision is unclear, we remand the case to DOES for further explanation.

## I.

Petitioner testified to the following facts at the DOES hearing on April 9, 1990. Petitioner was injured on July 12, 1989, while working for his part-time employer, Contemporary Services, as a security guard at a concert at RFK stadium. The injury occurred when the concert began and a crowd of people rushed toward the stage, knocking petitioner to the ground and injuring his right arm. Petitioner received first aid at RFK stadium and went to a hospital emergency room the following day. Some weeks later, petitioner had surgery performed on his arm. Medical reports indicated that petitioner had a 36% permanent partial disability to his "right upper extremity."

At the time of his injury, petitioner held—in addition to his part-time employment with Contemporary Services—a full-time job as a housing inspector for the District of Columbia Department of Public and Assisted Housing. His salary from the District government at the time of his injury was between $19,000 and $20,000 per year. His salary from Contemporary Services at that time was $4.75 per hour. As a result of the accident, petitioner missed approximately one and a half to two weeks of his full-time

job and approximately three months of his part-time job.

The Hearings and Appeals Examiner concluded that "Claimant's injury arose out of and in the course of his employment," and that "all the medical evidence in the record supports claimant's request[ed] relief." The Examiner found that petitioner's salary was $370 per week at his full-time job and $11.81 per week at his part-time job. He concluded that, because petitioner had "missed from seven to ten days of work at his full-time employment," petitioner was "entitled to temporary total disability benefits for both jobs for the first week of his disability ... based on [his combined] average weekly wage of $381.81." The Examiner also concluded, however, that "for purposes of his remaining temporary total disability [after his first week][1] and his permanent partial disability, claimant's average weekly wage is $11.81," reflecting only his part-time job.

Petitioner appealed from the Hearings and Appeals Examiner's decision, administratively, to the Director of DOES, contending that the Examiner had erred in failing to use "wage stacking" in computing his permanent partial disability benefits. The Director of DOES affirmed, ruling "it is clear that wage stacking allows for the combining of two wages only for the period that an employee is disabled and not able to work at both jobs." According to the Director, therefore, "since claimant returned to his full-time employment [after seven to ten days], claimant's average weekly wage for calculating his benefits under the permanent partial disability schedule should be $11.81." Petitioner challenges the Director's decision on the ground that petitioner was entitled to wage stacking, combining the average weekly wages for both his part-time and his full-time jobs, in the agency's calculation of his permanent partial disability benefits under D.C.Code § 36–308(3).

1. The Hearings and Appeals Examiner ruled that petitioner was entitled to 13 weeks of temporary total disability before his entitlement changed to permanent partial disability benefits. Petitioner does not challenge DOES's decision calculating his temporary total disability benefits, although he suggests that the temporary benefits he received after returning to his full-time job were, by definition, "temporary partial" disability benefits since he was then able to work at one of his jobs.

## II.

Petitioner relies on *MCM Parking Co. v. District of Columbia Dep't of Employment Servs.,* 510 A.2d 1041 (D.C.1986), for the proposition that wage stacking always applies to an injured worker who holds concurrent jobs at the time of an injury. Specifically, he contends in his brief that, because *MCM Parking* did not use "any language limiting the holding to temporary total or permanent total disability," wage stacking is mandated here.

*MCM Parking* does not compel the conclusion petitioner would have us reach. In that case, we concluded that "[i]f a worker, holding two jobs concurrently, *is totally disabled,* one way to assume 'replacement of wages lost' is to take both incomes into account when computing benefits awarded under the statute." 510 A.2d at 1043 (emphasis added). In the present case, however, petitioner's injury did not totally disable him; he was able to return to his full-time job seven to ten days after the injury while remaining unable to continue with his part-time job. In short, this case deals with a situation that *MCM Parking* did not address.

## III.

Petitioner next contends that the applicable language of the statute cannot be read to justify using more than one average weekly wage to determine a claimant's temporary total and permanent partial disability benefits.[2] Petitioner stresses, in particular, that because the total amount of permanent partial disability benefits under the statute is to be determined by reference to a prescribed formula, without regard to actual wage loss, the fact that he was able to return to his full-time employment soon after his injury should not have affected the calculation of his permanent partial disability benefits.

We must "defer to an agency's interpretation of a statute it administers unless that interpretation is unreasonable in light of the prevailing law." *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.,* 515 A.2d 740, 741 (D.C.1986); *see MCM Parking,* 510 A.2d at 1043; *Hughes v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 567, 569 (D.C.1985). The agency's interpretation, therefore, is "controlling unless it is plainly erroneous or inconsistent with the statute." *See Weaver Bros. v. District of Columbia Rental Hous. Comm'n,* 473 A.2d 384, 388 (D.C.1984). Although we are mindful of this deferential standard of review, the agency's analysis and justification of its position are insufficiently clear to permit an affirmance on this record. *See Long v. District of Columbia,* 570 A.2d 301, 302 (D.C.1990).

## A.

First, we note that in *James v. Sol Salins, Inc.,* 13 B.R.B.S. 762 (1981), the federal Benefits Review Board, applying the Longshoremen's and Harbor Workers' Compensation Act (Longshore Act), as amended, 33 U.S.C. §§ 901 *et seq.*—as incorporated by the District of Columbia Workmen's Compensation Act of 1928, D.C.Code §§ 36–501 *et seq.*

**2.** We note that in many jurisdictions "[w]hen an employee, who regularly holds two concurrent jobs, is injured in one of them, his [or her] wage will usually be based on his [or her] earnings in both if they are in a similar line of work. If they are not [in a similar line of work], a numerical majority of states will not combine the wages, but a strong and growing minority will combine them in all cases." 2 A. LARSON, LAW OF WORKMEN'S COMPENSATION § 60.00 (1983). Larson elaborates:

> When an employee at the time of injury is concurrently employed in two employments, the question arises whether his [or her] wage basis should be limited to his [or her] earnings in the employment in which he [or she] was injured, or should include his [or her] total earnings from both employments. On this is-

sue there are four different doctrines, sometimes by virtue of express statute and sometimes not. [1] The majority rule, by a very narrow numerical margin is that the earnings may be combined if, but only if, the employments were "related" or "similar." [2] A substantial and growing minority rule is that the earnings may be combined whether or not the employments were related or similar. [3] A very small minority of jurisdictions will not combine earnings from two employments even if they are similar or related. [4] And Michigan makes combinability turn, not on any test of similarity, which it has expressly disavowed, but on a consideration of whether the disability affects both employments:

> *Id.* at § 60.31(a).

(1973) [3]—reversed a decision of an administrative law judge because he misapplied the average weekly wage provisions. *See* 33 U.S.C. §§ 908, 910 (1982). Specifically, the judge had refused to amend the claimant's temporary total disability payments by changing the average weekly wage three employers had been paying voluntarily ($110) to conform to the average weekly wage the judge himself had computed for an award of permanent partial disability benefits ($143.37). The opinion did not reveal how the difference had arisen, but the Board stressed that "there can be only one average weekly wage upon which payments of compensation for an injury may be based, whether the disability for which compensation is payable is characterized as temporary or permanent, partial or total." *James,* 13 B.R.B.S. at 765 (citing 33 U.S.C. § 908).[4] This conclusion followed from the fact that, under 33 U.S.C. § 910, the average weekly wage is computed only one time for compensation purposes: "at the time of injury." [5] That provision in relevant part is identical to the successor statute, D.C.Code § 36–311(a)

(1993),[6] which applies here. See *supra* note 3.

*James* is not binding on DOES, since it interpreted a statute no longer in effect. See *supra* note 3. In light, however, of the fact that the language of the D.C. Workers' Compensation Act, applicable here, is carried over from its predecessor statute interpreted in *James,* see *supra* notes 3, 4, 5, and 6, and because interpretations under that earlier statute consequently have at least persuasive effect, *see Joyner v. District of Columbia Dep't of Employment Servs.,* 502 A.2d 1027 (D.C.1986) (upholding agency's reliance on interpretation of analogous Longshoremen's and Harbor Workers' Compensation Act), we are persuaded that DOES at least should address the *James* view in resolving the issue.[7]

**B.**

Second, in addition to the *James* interpretation that the average weekly wage, for all purposes, shall be calculated "at the time of the injury," see 13 B.R.B.S. at 765, when petitioner held both jobs, there is another

**3.** In *Estep v. Constr. Gen., Inc.,* 546 A.2d 376, 378 (1988), this court noted:

> In 1927, Congress passed the Longshoremen's and Harbor Workers' Compensation Act (the Longshore Act) to provide workers compensation for maritime employees. 33 U.S.C. §§ 901 *et seq.* (1982). A year later, Congress enacted the District of Columbia Workmen's Compensation Act of 1928 (the 1928 Act), which simply made the provisions of the Longshore Act applicable to deaths and injuries befalling workers employed in the District of Columbia. D.C.Code § 36–501 (1973). The 1928 Act has no substantive provisions of its own, it merely incorporates the provisions of the Longshore Act "including all amendments that may hereafter be made thereto." *Id.*
>
> The Council of the District of Columbia has since repealed the 1928 Act and replaced it with the District of Columbia Workers' Compensation Act of 1980 (the 1980 Act), which, for reasons not relevant here, did not take effect until July 24, 1982. D.C.Code §§ 36–301 *et seq.* (1981); *O'Connell v. Maryland Steel Erectors, Inc.,* 495 A.2d 1134, 1141 (D.C.1985) (as amended), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986).

**4.** Title 33 U.S.C. § 908 of the Longshore Act, incorporated into the District of Columbia Workmen's Compensation Act of 1928, see *supra* note

3, is virtually identical in all relevant respects to the disability provisions of the District of Columbia Workers' Compensation Statute at issue in this case, D.C.Code § 36–308 (1993). See *infra* note 9.

**5.** *33 U.S.C. § 910 provides in relevant part:*

> Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows: . . . .

**6.** D.C.Code § 36–311(a) provides in relevant part:

> (a) Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows: . . . .

**7.** The DOES Director concluded that "it is clear that wage-stacking allows for the combining of two wages only for the period that an employee is disabled and not able to work at both jobs." She accordingly ruled that "since claimant returned to his full-time employment [after the initial week], claimant's average weekly wage for calculating his benefits under the permanent par-

statutory reason why computation of different average weekly wages (over the course of employment since the injury) presents problems for calculation of permanent partial disability. The approach uniformly taken for calculating other types of disability benefits—temporary total, permanent total, and temporary partial—is intended to compensate the claimant for actual wage loss during the entire course of the disability.[8] The statutory approach to permanent partial disability, however, is different. D.C.Code § 36–308(3) entitles a claimant to such benefits by reference to the type of injury suffered, *e.g.*, arm, foot, eye, for specified numbers of weeks, without regard to actual wage loss.[9] *See Bundy v. Washington Metro. Area Transit Auth.*, H & AS No. 84–94 at 6 (July 11, 1985) ("compensation under the schedule ... in no way depends upon the employee's wage loss during the specified number of weeks of compensation"). The assumption underlying this approach is that, although the claimant may be able to continue working, the impact of the injury causing a permanent partial disability sooner or later will take its toll, and that the scheduled benefit will be an appropriate, if arbitrary, compensation to offset wage losses that eventually can be anticipated. *See* 1C A. LARSON, LAW OF WORKMEN'S COMPENSATION §§ 57.31(c), 58.00 (1983). From this perspective, one could argue that such compensation should be premised on the average weekly wage at date of injury, not some time later to account for a conceptually irrelevant change in actual weekly wage. The fact that a claimant may be able to return to one of two jobs, as in this case, does not necessarily mean that the permanent partial disability may not eventually undermine the claimant's ability to perform that job, such that omission of that job from the average weekly wage calculation would have caused a premature, shortsighted reduction of benefits. In short, the theory underlying the compensation schedule for permanent partial disability benefits is to provide a benefit attributable to a particular kind of injury, without regard to the ups and downs of actual wages.

### C.

Finally, there is another possible illogic in refusing to use wage stacking to calculate permanent partial disability benefits. It appears that wage stacking is required, at least for some purposes, in computing temporary partial disability benefits, since D.C.Code § 36–308(5) bases such benefits on an employee's "wage loss," defined as "the difference between the employee's average weekly wage before becoming disabled and the employee's actual wages after becoming disabled." *Supra* note 8. Suppose, for example, that an employee's injury—amounting to a temporary partial disability—results in reduced wages from each of two jobs. The "wage loss" would be the difference between the average weekly wage from both jobs combined, before the injury, and the employee's actual wages from one or both jobs, depending on how he or she is able to work

---

tial disability schedule should be $11.81." We do not understand why this analysis is "clear."

8. D.C.Code § 36–308(1), (2), and (5) provide in part:

> (1) In case of *total* disability adjudged to be *permanent*, 66⅔% of the employee's average weekly wages shall be paid to the employee *during the continuance thereof*....
>
> (2) In case of disability *total* in character but *temporary* in quality, 66⅔% of the employee's average weekly wages shall be paid to the employee *during the continuance thereof.*
>
> \*   \*   \*   \*   \*   \*
>
> (5) In case of *temporary partial* disability, the compensation shall be 66⅔% of the injured employee's wage loss to be paid *during the continuance of such disability,* but shall not be paid for a period exceeding 5 years. Wage loss shall be the difference between the employee's average weekly wage before becoming

disabled and the employee's actual wages after becoming disabled....

(Emphasis added.)

9. D.C.Code § 36–308(3) provides:

> (3) In case of disability partial in character but permanent in quality, the compensation shall be 66⅔% of the employee's average weekly wages which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with paragraph (2) or (4) [sic (5)] of this subsection respectively, and shall be paid to the employee, as follows:
> (A) Arm lost, 312 weeks' compensation;
> (B) Leg lost, 288 weeks' compensation;
> (C) Hand lost, 244 weeks' compensation;
> (D) Foot lost, 205 weeks' compensation;
> (E) Eye lost, 160 weeks' compensation;
>
> \*   \*   \*   \*   \*   \*

after the injury. Suppose, next, that the employee continues to work reduced hours on one job but is able to resume the other job full time, either because the particular disability no longer affects the latter job or because the employee is simply able to pick up the pace enough to improve overall productivity. There is no indication in the statute that the average weekly wage used for computing the temporary partial disability benefits would change to reflect resumption of full time work on one of the jobs (although it is true that, because of the way the formula operates, it makes no difference conceptually whether wage stacking is used or not).

We are unable to discern from the Director's decision how her analysis deals with the foregoing problems of statutory analysis—in particular, why the average weekly wage could change, once temporary partial disability turned to permanent partial disability, and why wage stacking should be eliminated if a claimant, like petitioner here, moved from temporary total to permanent partial disability.[10]

\*　　\*　　\*

As indicated earlier, see *supra* note 2, the states have taken various approaches to wage stacking. In this jurisdiction, *MCM Parking* establishes a wage stacking approach for total disability benefits. DOES has not explained the theory underlying its rejection of wage stacking when partial disability is involved. We therefore must remand the case to DOES for a clear explanation of its reasons for not using wage stacking to ascertain petitioner's average weekly wage, as of the date of injury, as the basis for calculating his permanent partial disability benefits. The agency, of course, is free to change the outcome if, on further analysis, a decision in favor of applying wage stacking is indicated here.

*So ordered.*

---

**10.** Although the Hearings and Appeals Examiner awarded petitioner's "temporary total," followed by "permanent partial," disability benefits, petitioner asserts, see *supra* note 1, that 12 of his 13 weeks of temporary benefits should have been characterized—and calculated—as "temporary partial" disability benefits, since after the first week of benefits he no longer was totally disabled but was able to work on one of his jobs.