**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

and

**Lin C. Chang, Intervenor.**

**No. 95–AA–1499.**

District of Columbia Court of Appeals.

Argued Sept. 25, 1996.

Decided Oct. 17, 1996.

---

1. *In re Kersey,* 520 A.2d 321 (D.C.1987).

Michael D. Dobbs, Spokane, WA, with whom Dona M. Kilpatrick, was on the brief, Washington, DC, for petitioner.

Charles F.C. Ruff, Corporation Counsel, Washington, DC, with whom Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Carolyn McKenney, Washington, DC, for intervenor.

Before FERREN and REID, Associate Judges, and NEWMAN, Senior Judge.

FERREN, Associate Judge:

Washington Metropolitan Area Transit Authority (WMATA) petitions for review of the decision of the Director of the Department of Employment Services (DOES) adopting the hearing examiner's order awarding intervenor Lin C. Chang workers' compensation benefits. The examiner concluded, and the Director agreed, that Chang was entitled to a schedule award under D.C.Code § 36–308(3) (1993 Repl.) for a 5% permanent partial disability in his legs arising from a non-schedule back injury that Chang had suffered in 1986. We affirm the Director's decision.

## I.

On April 15, 1986, Lin C. Chang, a forty-six-year-old WMATA mechanic, suffered a work-related back injury while lifting an air-conditioner compressor. Chang immediately sought treatment at Washington Hospital Center but was unable to return to work. Over the next few days, Chang continued to experience severe pain in his lower back when sitting and standing, along with occasional discomfort in his toes. Dr. Robert S. Viener, a board-certified orthopedic surgeon, examined Chang on April 21, 1986. After performing a series of tests, including nerve-conduction studies, EMGs, and a CAT scan, Dr. Viener diagnosed Chang as having advanced intervertebral disc degeneration and a central herniated disc.

Chang was unable to work for approximately fifteen weeks because of his work-related injuries. On August 5, 1986, Chang reached maximum medical improvement and returned to work. WMATA assigned Chang to light duty at a reduced salary. On August 25, 1986, Chang filed an "Employee's Claim Application" with DOES seeking an award for his lost wages under the District of Columbia Workers' Compensation Act (WCA) of 1979, D.C.Code §§ 36–301 to –345 (1993 Repl.). Before the claim could be adjudicated, WMATA and Chang entered into a written stipulation whereby WMATA agreed to compensate Chang in part for his lost wages from April 17, 1986 to August 4, 1986, and for his salary reduction after his return to light duty on August 5, 1986.[1]

Because Chang continued to experience spasms and discomfort in his legs and lower back, he remained under the care of Dr. Viener. On July 10, 1987, Dr. Viener rated Chang as suffering from "a 20% permanent partial disability for degenerative disc disease at multiple levels in the lumbar spine."

---

1. WMATA paid Chang $469.00 per week for the period he was temporarily totally disabled between April 17, 1986 and August 4, 1986. WMA-TA also paid Chang $49.64 per week until March 1989 to compensate for his reduced salary after he returned to light duty on August 5, 1986.

Dr. Viener later apportioned 15% of the 20% permanent partial disability to Chang's back condition and 5% of the disability "for his legs." Dr. Louis E. Levitt, petitioner WMA-TA's physician, examined Chang on October 27, 1987 and diagnosed a "5% whole body disability based on persistent symptomatology surrounding low back complaints." Dr. Levitt did not attribute any of Chang's whole body disability to his legs.

In February 1989, Chang's average weekly wage rose to $708.06 and exceeded for the first time his pre-injury weekly wage of $699.95. In the absence of weekly wage losses, WMATA stopped compensating Chang in March 1989 pursuant to the stipulation agreed upon in 1986. Chang, meanwhile, continued to experience problems with his back and legs attributable to the original work-related back injury. On December 18, 1989, Chang sought an independent medical examination from Dr. Harvey N. Minninberg. Dr. Minninberg examined Chang and assessed a 6% impairment to the whole body, which he mathematically converted to a 34% impairment to the "lower extremity." Shortly thereafter, Chang asked WMATA to compensate him for 34% permanent partial impairment of his legs. When WMATA declined, Chang filed a workers' compensation claim in February 1990 seeking a schedule award for permanent partial impairment in his left leg under D.C.Code § 36–308(3)(B).

At a hearing on July 10, 1990, Chang testified on his own behalf, and the parties introduced in evidence the medical reports of Dr. Viener, Dr. Minninberg, and Dr. Levitt. WMATA contended that Chang was barred as a matter of law from receiving a schedule award for a disability (leg) caused by a non-schedule injury (back), and that there was not substantial evidence to show that Chang suffered specifically from a leg disability. WMATA also defended on the ground that the stipulation agreement between WMATA and Chang precluded an award.

The hearing examiner concluded, based on Chang's testimony and the medical reports of Dr. Viener, that Chang suffered from "5% permanent partial disability to his legs as a result of trauma to his back." Relying on the Director's interpretation of the WCA in *Kovac v. Avis Leasing Corp.,* H & AS No. 84–177, OWC No. 0000792 (July 17, 1986), the examiner concluded that Chang was entitled to receive a schedule award for a leg disability caused by a non-schedule injury. Finally, the examiner found that the stipulation agreement between WMATA and Chang pertained only to Chang's back injury and thus did not preclude him from recovering benefits for his separate leg disability.

The Director adopted the examiner's findings and conclusions on October 6, 1995. He specifically ruled that the WCA, as previously interpreted in *Kovac,* permitted the recovery of a schedule award for a disability that arises from a non-schedule injury, and that there was nothing in the stipulation between the parties "that purports to limit claimant from pursuing any other remedies that might be valuable to claimant." On November 3, 1995, petitioner filed a timely petition for review of the Director's decision.

## II.

■ At the outset, we acknowledge that "it is the Director's final decision, not the examiner's, which may be reviewed in this court." *St. Clair v. District of Columbia Dep't of Employment Servs.,* 658 A.2d 1040, 1044 (D.C.1995) (per curiam). Under the District of Columbia Administrative Procedure Act, this court reviews the Director's decision under the now familiar "substantial evidence" standard. *See Harris v. District of Columbia Office of Worker's Compensation,* 660 A.2d 404, 407 (D.C.1995); *St. Clair,* 658 A.2d at 1043; D.C.Code §§ 1–1509(e), – 1510(a)(3)(E) (1992 Repl.). "We will not disturb the agency's decision if it flows rationally from the facts which are supported by substantial evidence in the record." *Oubre v. District of Columbia Dep't of Employment Servs.,* 630 A.2d 699, 702 (D.C.1993) (citations omitted).

■ Where questions of law are concerned, this court reviews the agency's rulings de novo; we are presumed to have the greater expertise when the agency's decision rests on a question of law, and we therefore remain "the final authority on issues of statutory construction." *Harris,* 660 A.2d at 407;

see *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984). Nevertheless, this court ordinarily defers to the agency's interpretation of the statute it enforces. We have concluded that:

> [W]e must give great weight to any reasonable construction of a regulatory statute that has been adopted by the agency charged with its enforcement. The interpretation of the agency is binding unless it is plainly erroneous or inconsistent with the enabling statute. Consequently, we sustain the agency decision even in cases in which other, contrary, constructions may be equally as reasonable as the one adopted by the agency.

*Lee v. District of Columbia Dep't of Employment Servs.*, 509 A.2d 100, 102 (D.C.1986) (citations omitted); *see DeShazo v. District of Columbia Dep't of Employment Servs.*, 638 A.2d 1152, 1154 (D.C.1994); *Saah v. District of Columbia Bd. of Zoning Adjustment*, 433 A.2d 1114, 1116 (D.C.1981).

### A.

■ WMATA contends the Director erred as a matter of law in awarding Chang a schedule award for a leg disability caused by a separate non-schedule injury compensable under the WCA's wage loss provisions. The Director, in concluding that the WCA's schedule award provisions permit an award for a disability caused by a non-schedule injury, adopted both the reasoning and holding of his earlier decision in *Kovac*. WMATA's claim of error, therefore, compels this court to consider whether the Director erred as a matter of law in *Kovac*—a ruling which this court has never had occasion to review.

D.C.Code § 36–308(3)(A)-(U) sets forth the WCA's schedule award provisions intended to compensate a claimant for the total or partial permanent loss, or loss of use of, specifically described "members" of his or her body. Unlike the statute's wage loss provisions, a claimant qualifies for a schedule award regardless of whether the claimant

actually suffers a wage loss as a consequence of the disability. Section 36–308(3) provides:

> Compensation for disability shall be paid to the employee as follows:
>
> (3) In case of disability partial in character but permanent in quality, the compensation shall be 66 2/3% of the employee's average weekly wages which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with paragraph (2) or (4) of this subsection respectively, and shall be paid to the employee, as follows:

Subsections (A) through (U) then set forth the number of weeks of compensation (at the 66 2/3% rate prescribed under § 36–308(3)) awarded for each of the various schedule disabilities. For example, subsection (A) establishes 312 weeks of compensation for an "arm lost," whereas subsection (B) awards an employee 288 weeks of compensation for a "[l]eg lost." *Id.* D.C.Code § 36–308(3)(S), in turn, entitles a claimant to an award for proportionate loss or loss of use of a listed member.[2]

When a claimant has suffered a permanent partial disability that is not listed under the schedule provisions set out under D.C.Code § 36–308(3)(A) through (U), a catch-all provision, § 36–308(3)(V), entitles a claimant to a wage loss award. In order to qualify for such an award, the employee must actually suffer a reduction in average weekly wages as a result of the disability. More specifically, subsection (V) provides that "in other cases":

> (ii) The compensation shall be 66 2/3% of the greater of:
>
> (I) The difference between the employee's actual wage at the time of injury and the average weekly wage, at the time of injury, of the job that the employee holds after the employee becomes disabled; or
>
> (II) The difference between the average weekly wage, at the time the employee returns to work, of the job that the employee held before the employee became disabled and the actual wage of the job

2. D.C.Code § 36–308(3)(S) in relevant part provides:

Compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member.

that the employee holds when the employee returns to work.

*Id.* § 36–308(3)(V).

Until *Kovac*, the Director had never decided whether an employee could receive a schedule award under § 36–308(3)(A)-(U) for a disability caused by a non-schedule injury producing a disability compensable under § 36–308(3)(V)'s wage loss provisions. The claimant in *Kovac*, a heavy truck mechanic, suffered a herniated lumbar disc while engaged in heavy lifting. After he had received a wage loss award for a permanent partial disability in his back—a non-schedule disability—the claimant sought a schedule award for a 15% permanent partial disability in his right leg—a schedule disability—caused by the back injury.[3] Claimant's employer, like the petitioner in the present case, defended on the ground that the WCA's schedule award provisions precluded an award for a disability caused by a non-schedule injury for which the claimant had received a wage loss award.

In making his ruling, the Director recognized that the case presented an interpretive question of first impression arising under the District's workers' compensation statute. Namely,

> [m]ay an employee receive an award under the schedule for loss of use of a leg when such a loss of use resulted from an injury to the back, a part of the body not listed under the schedule provisions?

*Kovac*, at 2. At the time, it had only been decided that when a single disability was confined to a body part listed under the WCA's schedule provisions, an employee was required to accept the schedule award rather than opt for a wage loss award even if the result was less compensation for the claimant. *See Lenaerts v. Superior Iron Works,* H & AS No. 85–174, OWC No. 0010974 (May 23, 1986), *aff'd sub nom Lenaerts v. District of Columbia Dep't of Employment Servs.,* 545 A.2d 1234 (D.C.1988).[4]

The Director engaged in a thorough analysis of the WCA's wage loss and schedule loss provisions set forth under the D.C.Code § 36–308(3). He observed that the WCA's schedule award provisions expressly compensated for "disabilities," not injuries, and reasoned that "compensation is not payable for injuries but disabilities" because, with a "disability," there "is almost always a deleterious effect on wages." *Kovac*, at 5. The Director also noted:

> Nothing in the Act ... suggests that compensation for a permanent partial functional incapacity represented by a schedule award is payable only in instances where the situs of the trauma and the situs of the disability happen to coincide. In fact, except for § 9(c)(21),[5] there is no reference

---

**3.** Kovac sought a schedule award under D.C.Code § 36–308(3)(B), which provides 288 weeks of compensation for "[l]eg lost." Kovac had already received a wage loss award for his back disability under the wage loss provisions then in effect. *See* D.C.Code § 36–308(3)(V) (1981) (codifying § 9(c)(22) of the WCA) (stating that "wage loss shall be the difference between the employee's average weekly wage before becoming disabled and the employee's actual wages after becoming disabled"). Although not relevant for purposes of our analysis, § 36–308(3)(V) was later amended to provide the two current methodologies set out at § 36–308(3)(V)(ii) for computing a wage loss award. *See* D.C. WORKERS' COMPENSATION EQUITY AMENDMENT ACT OF 1989, 37 D.C.Reg. 6890, 6894 (1990).

**4.** WMATA argues that *Lenaerts*, not *Kovac*, actually controls the result in the present case. That argument has no merit. In *Lenaerts*, the claimant, an iron worker journeyman, permanently disabled her leg in a fall. *Lenaerts*, H & AS No. 85–174, at 2. Claimant maintained that as a result of this single disability she qualified under

both the schedule and wage loss provisions of the WCA, and that she could elect to have her benefits paid under either. *Id.* In a decision this court subsequently affirmed on appeal, the Director looked to the WCA's plain language, legislative history, and the settled construction of the analogous federal statute, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* (1994), and concluded that for a single disability compensable under the schedule an employee could not elect to receive a wage loss award. *Id.* at 12–15. Here, as in *Kovac*, the claimant suffered a non-schedule back disability and a separate and distinguishable leg disability and thus suffered from two disabilities, not one.

**5.** Section 9(c)(21) of the WCA (codified at D.C.Code § 36–308(3)(U)) provided:

> In any case in which there shall be a loss of, or loss of use of, more than one (1) member or parts of more than one (1) member set forth in paragraphs (1) to (19) [D.C.Code § 36–308(3)(A)-(S) ] of this paragraph, not amount-

to an "injury" within the permanent partial disability provisions. In § 9(c)(21), moreover, it is not the situs of the injury which determines whether a schedule award is payable, it is the situs of the disability resulting from the injury which is controlling.

*Kovac,* at 6.

In ruling that the WCA permitted a claimant to recover a schedule award for a disability listed in the schedule even if that disability was caused by an injury to a non-schedule part of the body, the Director refused to regard as persuasive authority a case upon which petitioner now relies, *Grimes v. Exxon,* 13 B.R.B.S. 573 (Oct. 1, 1981). In *Grimes,* a federal review board interpreted the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.,* as precluding recovery for a schedule award for a disability caused by a non-schedule injury. Although recognizing that the Council of the District of Columbia had adopted the WCA substantially from the LHWCA, the Director reiterated the examiner's observations that the *Grimes* board's interpretation conflicted with the LHWCA's language and was not based on any sound rationale. *Id.,* at 3.

Giving the Director's interpretation of the WCA in *Kovac* the weight to which it is entitled, we conclude that it is a reasonable interpretation and certainly not contrary to law. *See DeShazo,* 638 A.2d at 1154. Looking to the language of the statute, we see nothing to suggest that recovery of a schedule award for a disability is permitted only where it is caused by an injury to the scheduled member. As the Director noted in *Kovac,* § 36–308(3)'s schedule provisions expressly award compensation to a claimant for "disability partial in character but permanent in quality" in any of the enumerated "members" without requiring the source of the disability to be in the "member" as well. *Id.* There is nothing in the legislative history, moreover, that reveals an intent to restrict recovery of a schedule award to instances where the site of the injury and disability coincide. *See* COMMITTEE ON PUBLIC SERVICES AND CONSUMER AFFAIRS, REPORT ON BILL 3–106, DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979 (January 16, 1980); COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, REPORT ON BILL 3–106, DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979 (January 19, 1980).

Unlike the interpretation urged by petitioner, the Director's interpretation also promotes the humanitarian purposes intended to be served by the statute. Where the WCA is involved, there is a "presumption of compensability"; like other workers' compensation statutes, the WCA is to be " 'liberally construed for the benefit of the employee.' " *Harris,* 660 A.2d at 408 (quoting *Railco Multi–Constr. Co. v. Gardner,* 564 A.2d 1167, 1169 (D.C.1989)). A number of other jurisdictions have construed their compensation statutes similarly to permit a claimant to receive a schedule award for a disability caused by a non-schedule injury. *See Arnott v. Industrial Comm'n,* 103 Ariz. 182, 438 P.2d 419 (1968); *Keith v. Dover City Cab Co.,* 427 A.2d 896 (Del.Super.1981); *Fogle v. Sedgwick County,* 235 Kan. 386, 680 P.2d 287 (1984); *Kirchner v. County of Anoka,* 410 N.W.2d 825 (Minn.1987); *Nordby v. Gould, Inc.,* 213 Neb. 372, 329 N.W.2d 118 (1983); *Walker v. State Comp. Dept.,* 248 Or. 195, 432 P.2d 1018 (1967).

Finally, we discern no error arising from the fact that the Director in *Kovac* declined to adopt for the purposes of interpreting the WCA the interpretation of the LHWCA set out in *Grimes.* While it is true that with borrowed legislation such as the WCA we ordinarily "look to the interpretation of the federal statute for guidance in determining the construction of our own statute," *Benefits Communication Corp. v. Klieforth,* 642 A.2d 1299, 1304 (D.C.1994), there must be some likelihood before we do so that the Council was, in fact, aware of the judicial interpretation in question at the time the local legisla-

---

ing to permanent total disability, the award of compensation shall be for the loss of, or loss of use of, each such member or part thereof, which awards shall run consecutively, except that where the injury affects only two (2) or more digits of the same hand or foot, paragraph (17) [D.C.Code § 36–308(3)(Q) ] of this paragraph shall apply.

WORKERS' COMPENSATION ACT OF 1979, 27 D.C.Reg. 2503, 2515 (1980).

tion was enacted. *See McReady v. Department of Consumer & Regulatory Affairs,* 618 A.2d 609, 615 (D.C.1992).

The Council obviously cannot be deemed to have adopted the Review Board's interpretation of the LHWCA in *Grimes,* a 1981 decision, because it enacted the WCA in 1980. *See* DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979, D.C. Law 3–77, 27 D.C.Reg. 2503 (1980). At oral argument, counsel for WMATA suggested that because the WCA did not become effective until July 24, 1982, the Council should be deemed to have adopted *Grimes,* decided October 1, 1981. This argument misses the point, however. The Council adopted the WCA on May 6, 1980; the Mayor signed it on May 14, 1980; the legislation was forwarded to Congress the next day and, absent congressional disapproval, became law on July 1, 1980, with a statutory effective date (§ 47) of October 1, 1981. *See District of Columbia v. Greater Washington Central Labor Council, AFL–CIO,* 442 A.2d 110, 114 (D.C.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983). The WCA, however, became embroiled in litigation, and the Superior Court invalidated the statute on September 26, 1980. *Id.* This court reversed that ruling and upheld the validity of the WCA on January 28, 1982. *Id.* at 110.

In response to concerns that the District would be unable to implement the law immediately, the Council amended the WCA's effective date, and the statute finally became operational on July 24, 1982—the date on which counsel for WMATA relies. DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979 AMENDMENTS ACT OF 1982, D.C. Law 4–161, 29 D.C.Reg. 1179 (1982). Given the legislative history, however, we cannot impute knowledge of *Grimes* to the Council simply on the ground that the Council extended the statute's effective date to July 24, 1982. Between May 6, 1980 and July 24, 1982, the Council paid no attention to the substance of the legislation; the Council amended only the effective date of the WCA, and only in response to judicial developments in this jurisdiction. There is no evidence whatsoever that the Council's action extending the effective date included any consider-

ation of the October 1, 1981 *Grimes* decision. The Director, therefore, was entirely free to reject *Grimes* when construing the WCA's schedule award provisions in *Kovac.*

█ Because the Director's interpretation in *Kovac* was reasonable, we conclude in the present case that the Director did not err in ruling that Chang was not barred as a matter of law from receiving a schedule award for his leg, even though that disability had been caused by a non-schedule injury to his back. "[A]gencies, like courts, must and do favor a policy of *stare decisis* unless unusual circumstances intervene." *Reichley v. District of Columbia Dep't of Employment Servs.,* 531 A.2d 244, 247 (D.C.1987). Accordingly, if Chang offered evidence to establish permanent partial disability in his legs separate from his back injury, the Director's decision affirming the examiner's compensation order awarding Chang a schedule award was correct. We therefore turn to consider whether Chang offered sufficient evidence to support his claim of permanent partial leg disability.

**B.**

█ WMATA contends the Director erred in adopting the hearing examiner's ruling that Chang suffered from a "5% permanent partial disability to his legs." *See* D.C.Code § 36–308(3)(B), (S) (setting forth schedule award for leg disability). Because the DOES Director is limited to substantial evidence review of a hearing examiner's decision, WMATA's contention requires us to consider whether the Director was correct in ruling that the examiner's decision in Chang's favor was based on substantial evidence. *See Dell v. Department of Employment Servs.,* 499 A.2d 102 (D.C.1985); *see also* 7 DCMR § 230.9 (1986). The substantial evidence issue "presents an issue of law which this court is in a position to address without need for deference to the agency's ... decision." *Gunty v. Department of Employment Servs.,* 524 A.2d 1192, 1198 (D.C.1987).

█ It is well-settled that "'substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Dell*, 499 A.2d at 108 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The trier of fact—in this case the hearing examiner—"is entitled to draw reasonable inferences from the evidence presented." *Id.; see George Hyman Constr. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 566 (D.C.1985). Where credibility questions are involved, "the fact-finding of hearing officers is entitled to great weight," *In re Dwyer*, 399 A.2d 1, 12 (D.C. 1979), since the hearing examiner is in the best position to observe the demeanor of witnesses.

The examiner expressly credited Chang's testimony that he suffered from intermittent pain in his right leg radiating down through his thigh to his toes. Chang also stated that he experienced loss of sensation in his right leg affecting his ability to drive, to engage in sports, and to stand or sit down for a long period of time. The examiner also credited the testimony of Dr. Viener, claimant's treating physician for over four years. Dr. Viener rated Chang as having 20% permanent partial disability in his body as a whole. Dr. Viener then converted the permanent partial disability for Chang's whole body to 15% for the back and 5% "for his legs."

WMATA contends that the 5% permanent partial disability award for the "legs" is arbitrary, capricious, and unsupported by substantial evidence because Chang had filed a claim for permanent partial impairment of his left leg, his testimony had attributed the disability to his right leg, and the examiner and Director had entered an award for the "legs." This argument fails. Dr. Viener, the treating physician, ascribed the 5% permanent partial disability to the "legs" and noted that "Mr. Chang has exhibited symptoms referable to both legs during his course of treatment." Dr. Minniberg's report also notes that Chang complained of "radiating discomfort to both lower extremities." Chang's testimony, while in some places referring only to pain in his right leg, also responded to counsel's questions concerning pain in his "legs" by detailing the symptoms and the effects without limiting the pain to one leg or the other.

Furthermore, even if Chang's testimony, to the extent it referred to a particular leg, mentioned only the disability to his right leg, rather than to the left leg as originally claimed, there was enough testimony—lay and expert—to confirm a leg disability based on substantial evidence. Counsel for WMATA was aware of Chang's original complaint, of Chang's testimony at the hearing, and of Dr. Viener's reference to permanent partial disability of Chang's "legs"; and yet counsel chose not to cross-examine Chang at the hearing on whether the pain was limited to one lower extremity or the other. This court will only determine whether there is sufficient evidence in the record to support the factual findings below. To the extent that Chang's testimony contradicted claims in legal papers filed on his behalf, the hearing examiner was in the best position to judge the impact, if any, on Chang's credibility. We conclude the evidence was sufficient to support a permanent partial disability ruling as to the legs, based upon Chang's testimony and the reports of his treating and examining physicians.

## C.

WMATA also contends the Director erred in finding a 5% disability to Chang's legs based only on a mathematical conversion from a whole body disability (here, a permanent partial whole body disability of 20%). DOES, however, has declared such a mathematical conversion to be an acceptable method for determining the degree of a schedule disability as long as the conversion is within "the realm of reasonableness." *Gregory v. Howard Univ.*, H & AS 88-524, OWC No. 0077580 (Oct. 9, 1991). Petitioners cite no evidence to suggest that Dr. Viener's conversion was unreasonable. Finally, Dr. Levitt's opinion that Chang suffered from no disability to his legs, besides conflicting with Dr. Viener's medical opinion, directly conflicted with Chang's credible complaints of leg pain. Based on this evidence, the hearing examiner reasonably could conclude that Chang suffered from a 5% permanent partial disability

to his legs separate from his back disability.[6]

Accordingly, the decision of the Director is *Affirmed.*

---

6. WMATA asserts on appeal that Chang is precluded from seeking a schedule award by the stipulation entered into between Chang and WMATA in 1986. The examiner and Director determined, and we agree, that the stipulation did not bar Chang from pursuing a schedule award for his leg disability. The stipulation plainly addresses only Chang's wage loss claims and does not purport to limit Chang from pursuing any other remedies, including a schedule award for his related leg disability. Nor does WMATA point to any parol evidence to suggest that the stipulation was meant to be a final resolution of all claims arising from Chang's back injury.